THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff *v.* GILBERT H. WELLS, Defendant.

Supreme Court, Trial Term, Warren County, March 6, 1946.

*Alexander Grasso* for defendant.

*J. Clarence Herlihy, District Attorney,* for plaintiff.

RYAN, J. The defendant herein, Gilbert H. Wells, moves for a dismissal of the indictment which charges him with the crime of manslaughter in the second degree, in violation of section 1052 of the Penal Law of the State of New York. The indictment charges: "The said Gilbert H. Wells on the 23rd day of June, 1945, at the Town of Johnsburg in the County of Warren, aforesaid, without a design to effect death, in a culpable and negligent manner fired two shots from a 30-30 caliber gun, one of which bullets struck and killed Alfred A. Egenhofer, such act not being justifiable or excusable by law."

The only direct evidence before the Grand Jury as to the manner in which the alleged crime occurred, was supplied through the introduction of a written statement which had been given by the defendant to the Sheriff of Warren County. This statement dated June 24, 1945, was signed on the day following the shooting and it indicates that on the 23d day of June, 1945, the defendant, an employee of the American Locomotive Company, and his seven-year-old son went to the locality in the town of Johnsburg, Warren County, known as Beaver Meadow for the purpose of fishing. The defendant states that he took with him on this fishing trip a 30-30 caliber rifle.

Beaver Meadow, so-called, gets its name from a pond which was formed by a beaver dam, and is situated in a thickly wooded area. The statement continues that after spending the afternoon fishing, the defendant and his son sat down at the edge of the water near the dam, and that while they were sitting there his son "yelled", "there is a fox". The defendant states that he looked and saw something moving, at a distance of about 500 feet away, and believing it was a fox, he fired his gun at the moving object. Immediately following the first shot, he fired a second shot and then he heard a yell, and walked toward the direction from which the yell had come, and there found the deceased Egenhofer, who had been mortally wounded by one of the shots fired by the defendant.

The evidence before the Grand Jury discloses that the defendant rendered what assistance he could to the wounded man, and then left him to go for help and assistance. The evidence discloses that upon his return to the scene of the shooting with a doctor and the sheriff of the county and other persons whose help he had solicited, they found Egenhofer dead. The medical

testimony indicates that the deceased met his death from a bullet wound which penetrated his left chest, and there is no question raised that the bullet fired from the gun of the defendant did not cause the mortal wound. The defendant states that he had not seen or heard Egenhofer prior to the shooting, and that he did not know of the presence of any person in the vicinity other than his son and himself. This constitutes the only direct evidence bearing upon the facts and circumstances of this most tragic occurrence, and upon this testimony is predicated the charge of manslaughter in the second degree.

Subdivision 3 of section 1052 of the Penal Law provides: "Such homicide is manslaughter in the second degree, when committed * * * By any act, procurement or culpable negligence of any person, which, according to the provisions of this article, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

The question before this court for decision upon this motion is whether there was sufficient legal evidence before the Grand Jury to sustain the charge against this defendant that he was culpably negligent at the time and under the circumstances.

Culpable negligence has been defined as something more than the slight negligence necessary to support a civil action for damages. "In Wharton on Homicide we find the statement that to warrant to conviction of manslaughter there must be criminal intent or negligence so gross as to imply it (p. 9)." (*People* v. *Angelo*, 246 N. Y. 451, 454.) Further defining the word "culpable" the court in the same opinion points out (pp. 456–457): "It would seem clear, therefore, that the Legislature used the word in the same sense as it had been used for centuries — as the equivalent of 'criminal,' 'reckless,' 'gross,' such negligence as is worthy of punishment."

That a very definite distinction exists between actionable and criminal negligence is clearly demonstrated by the words of Chief Judge CULLEN in *People* v. *Rosenheimer* (209 N. Y. 115, 123): "A distance separates the negligence which renders one criminally liable from that which establishes civil liability."

The Appellate Division discusses the question of culpable negligence in the case of *People* v. *Pace* (220 App. Div. 495, 497): "The trial court, in explaining the meaning of the expression 'culpable negligence' to the jury, said that the negligence must be 'culpable or blameworthy, or criminal, or of such a character that it implies a reckless indifference to the consequences and a disregard for the safety of others.' Again, upon request, the court charged that 'the word culpable is not

equal to careless.' It will be noted that in the sentence first quoted the court uses the disjunctive, saying, 'culpable *or* blameworthy, *or* criminal, *or* of such a character,' etc. We are of the opinion that from this charge the jury might well have obtained the impression that negligence to the extent of blameworthiness only, failure to use ordinary care (as well as reckless indifference) met the test as to criminal culpability.''

It was primarily upon this portion of the trial court's charge that the Appellate Division reversed the conviction of manslaughter in the second degree.

In the case of *People* v. *Gardner* (255 App. Div. 683, 687) the court held: '' The test is not satisfied by proof of excessive speed amounting to negligence but by proof of speed of that character — if such was the case — and other circumstances which, as we have seen, together must show a reckless disregard by the accused of the consequences of his conduct and his indifference ·to the rights of others.'' And again, in *People* v. *Bearden* (290 N. Y. 478, 482) Judge Lewis, writing for the Court of Appeals, defines culpable negligence in the following paragraph: '' The word ' reckless ' and the phrase ' culpably negligent manner,' as employed in the penal statute· quoted above connote something more than the slight negligence necessary to support a civil action for damages. Both word and phrase import a disregard by the accused of the consequences of his act — an indifference to the rights of others.''

A review of the testimony before the Grand Jury impels me to the conclusion that there was no legal evidence before it, which would warrant· an inference that the conduct of the defendant on the occasion in question came within this definition. He was engaged in a lawful act, and was well within his legal rights to shoot and kill foxes. The minutes of the Grand Jury disclose that foxes were prevalent in the locality. Tragic as the consequences were, the defendant can be held criminally responsible only, if his acts under the circumstances constituted a reckless disregard of the consequences of his act, and an indifference as to the rights of others. '' Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not constitute culpable negligence. There must exist in the mind of the accused at the time of the act or omission, a consciousness of the probable consequences of the act, and a wanton disregard of them.'' (*People* v. *Carlson,* 176 Misc. 230, 232.)

The position of the People upon this motion, that the question of whether or not the acts of the defendant were culpably negligent constitute a question of fact solely for the jury, is not tenable. "Under a given state of facts, whether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question whether negligence exists at all. But in the one case as in the other it may become a question of law. If the negligence is so slight as not to reach the required standard the court should advise an acquittal of the accused." (*People* v. *Angelo*, 246 N. Y. 451, 458, *supra*.)

The motion to dismiss the indictment is therefore granted. Submit order accordingly.