[Crim. No. 7222. Second Dist., Div. Three. Nov. 16, 1960.]

THE PEOPLE, Respondent, v. ISABEL L. RODRIGUEZ, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Richard S. Buckley and James L. McCormick, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused of manslaughter in that on November 8, 1959, she did wilfully, unlawfully, feloniously, and without malice kill Carlos Quinones. In a nonjury trial she was found guilty of involuntary manslaughter. A new trial was denied. She appeals from the judgment and the order denying a new trial.

In November 1959 defendant was living with her four children in a single-family residence at 130 South Clarence Street, Los Angeles. The oldest child was 6 years of age. Carlos Quinones was the youngest, either 2 or 3 years of age.

Olive Faison lived across the street from defendant. About 10:45 p.m. on November 8, 1959, Miss Faison heard some children calling, "Mommy, mommy." For about 15 or 20 minutes she did not "pay too much attention." She noticed the cries became more shrill. She went to the front window and saw smoke coming from defendant's house. She "ran across the street and commenced to knock the door in and started pulling the children out." There was a screen door on the outside and a wooden door inside the screen door. The screen door was padlocked on the outside. The other door was open. She broke the screen door and with the help of neighbors pulled three of the children out of the house. She tried to get into the house through the front door but could not because of the flames. A neighbor entered through the back door but could not go far because of the flames. Miss Faison took the three children to her apartment and shortly thereafter returned to the scene of the fire. She remained "until after the little boy was brought out and revived and sent to the hospital." Miss Faison did not see defendant around the house or the neighborhood at the time of the fire.

Firemen arrived at the scene some time after 10 p.m. The front door was open; there was no obstruction. Fireman Hansen went inside and found a baby boy in the back bedroom

near the bed. The fire was about 3 feet away from the boy. Hansen took the boy out of the house. "He appeared to be dead at the time." The child was Carlos Quinones.

Around 4 or 4:30 p.m. on November 8, 1959, defendant was in "Johnny's Place." She was at the bar drinking "coke." She stayed about an hour. As John Powers, one of the bartenders, was closing the place about 2:30 a.m. on the morning of November 9, he saw defendant outside the building. He had not seen her inside before that time.

Maria Lucero, defendant's sister, went to defendant's home about 12 p.m. on November 8, 1959. She went looking for defendant. She found her about 2 or 2:30 a.m. in the same block as "Johnny's Place." Defendant was nervous and frightened, said she knew about the fire and that she went over to tell Johnny Powers about it. Defendant had not been drinking.

Carlos Quinones died from "thermal burns, second and third degree involving 50 to 60 per cent of the body surface." Defendant did not testify.

It is first contended the evidence fails to establish a corpus delicti of the offense charged. ▮▮ In a homicide case the corpus delicti consists of two elements: the death of a human being, and the existence of a criminal agency as the cause. (*People* v. *Amaya,* 40 Cal.2d 70, 75 [251 P.2d 324].) The argument is that there was no proof of the existence of a criminal agency as the cause of the death of Carlos.

"Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . 2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection . . . ." (Pen. Code, § 192.) "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (Pen. Code, § 20.)

▮▮ Section 20 of the Penal Code makes the union of act and wrongful intent or criminal negligence an invariable element of every crime unless it is excluded expressly or by necessary implication. (*People* v. *Stuart,* 47 Cal.2d 167, 171 [302 P.2d 5, 55 A.L.R.2d 705].) Section 26 of the Penal Code lists, among the persons incapable of committing crimes, "Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negli-

gence.'' Thus the question is: Was there any evidence of criminal intent or criminal negligence?

The attorney general contends that even if defendant had no criminal intent and was not criminally negligent, she violated section 273a of the Penal Code and therefore committed an unlawful act within the meaning of section 192 of the Penal Code.

Penal Code, section 273a, reads: ''Any person who willfully causes or permits any child to suffer, or who inflicts thereon unjustifiable physical pain or mental suffering, and whoever, having the care or custody of any child, causes or permits the life or limb of such child to be endangered, or the health of such child to be injured, and any person who willfully causes or permits such child to be placed in such situation that its life or limb may be endangered, or its health likely to be injured, is guilty of a misdemeanor.''

██ ''It does not follow, however, that such acts, committed without criminal intent or criminal negligence, are unlawful acts within the meaning of section 192 of the Penal Code, for it is settled that this section is governed by section 20 of the Penal Code. Thus, in *People* v. *Penny*, 44 Cal.2d 861, 877-880 [285 P.2d 926], we held that 'there was nothing to show that the Legislature intended to except section 192 of the Penal Code from the operation of section 20 of the same code' and that the phrase 'without due caution and circumspection' in section 192 was therefore the equivalent of criminal negligence. Since section 20 also applies to the phrase 'unlawful act,' the act in question must be committed with criminal intent or criminal negligence to be an unlawful act within the meaning of section 192. By virtue of its application to both phrases, section 20 precludes the incongruity of imposing on the morally innocent the same penalty (Pen. Code, § 193) appropriate only for the culpable. Words such as 'unlawful act, not amounting to felony' have been included in most definitions of manslaughter since the time of Blackstone [citations] and even since the time of Lord Hale, 'unlawful act' as it pertains to manslaughter has been interpreted as meaning an act that aside from its unlawfulness was of such a dangerous nature as to justify a conviction of manslaughter if done intentionally or without due caution. [Citations.] ██ To be an unlawful act within the meaning of section 192, therefore, the act in question must be dangerous to human life or safety and meet the conditions of section

20." (*People* v. *Stuart*, 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705].)

It appears from the record that guilt was predicated on the alleged "commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (Pen. Code, § 192.)

In *People* v. *Penny*, 44 Cal.2d 861 [285 P.2d 926], the defendant was convicted of involuntary manslaughter. While engaged in the practice of "face rejuvenation" she applied a formula containing phenol to the skin. Death was caused by phenol poisoning. The trial court charged the jury that ordinary negligence was sufficient to constitute lack of "due caution and circumspection" under Penal Code, section 192. The court said (p. 869) : "It has been held that without 'due caution and circumspection' is the equivalent of 'criminal negligence.' " ▆▆▆ After reviewing numerous California authorities, the court continued (p. 876) :

"So far as the latest cases are concerned, it appears that mere negligence is sufficient to constitute a lack of due caution and circumspection under the manslaughter statute (Pen. Code, § 192, subd. 2). This does not appear to be a correct rule. Something more, in our opinion, is needed to constitute the criminal negligence required for a conviction of manslaughter."

"[P. 879.] The statute (Pen. Code, § 192, subd. 2) provides (in part) that in order to convict a person of involuntary manslaughter, there shall be an unlawful killing of a human being in the commission of a lawful act which might produce death without due caution and circumspection. The words lack of 'due caution and circumspection' have been heretofore held to be the equivalent of 'criminal negligence' (Pen. Code, § 20). The general rule is set forth in 26 American Jurisprudence, Homicide, section 210, page 299, as follows: 'The authorities are agreed, in the absence of statutory regulations denouncing certain acts as criminal, that in order to impose criminal liability for a homicide caused by negligence, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or in other words, a disregard of human life or an indifference to conse-

quences.' The article continues thus: 'Aside from the facts that a more culpable degree of negligence is required in order to establish a criminal homicide than is required in a civil action for damages and that contributory negligence is not a defense, criminal responsibility for a negligent homicide is ordinarily to be determined pursuant to the general principles of negligence, the fundamental of which is knowledge, actual or imputed, that the act of the slayer tended to endanger life. The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act.'

"We hold, therefore, that the general rule just quoted, sets forth the standard to be used in California for negligent homicide (Pen. Code, § 192, subd. 2) in other than vehicle cases. Defendant here was charged with a violation of section 192, subdivision 2, of the Penal Code."[1] (See 8 Stan.L.Rev. 463.)

---

[1]Other definitions of criminal and culpable negligence are: *State* v. *Hintz*, 61 Idaho 411 [102 P.2d 639]: " 'The term "criminal negligence," as used in that section [the statute identical with Pen. Code, § 20], does not mean merely the failure to exercise ordinary care, or that degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of consequences and of the rights of others.' " *State* v. *Baublits*, 324 Mo. 1199 [27 S.W.2d 16, 21]: "Culpable negligence is tantamount to gross carelessness or recklessness incompatible with a proper regard for human life. . . . One may endanger the life or bodily safety of another through ordinary negligence only, but that degree of negligence is not sufficient to render one criminally responsible." *People* v. *Carlson*, 176 Misc. 230 [26 N.Y.S.2d 1003, 1005]: "Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not constitute culpable negligence. There must exist in the mind of the accused, at the time of the act or omission, a consciousness of the probable consequences of the act, and a wanton disregard of them." (Also see *People* v. *Wells*, 186 Misc. 979 [66 N.Y.S.2d 161, 164].) *People* v. *Brucato*, 32 N.Y.S.2d 689, 691: "Criminal negligence is synonymous with culpable negligence. Such negligence encompasses a reckless and wanton disregard for the safety of life and limb. . . . In sum, the evidence must disclose what would almost be tantamount to a wilfulness to do harm on the part of the offender." *Cannon* v. *State*, 91 Fla. 214 [107 So. 360, 363]: " '[A] gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.' " *Kirk* v. *Commonwealth*, 186 Va. 839 [44 S.E.2d 409, 412]: " 'The negligence required in a criminal proceeding must

440

It is generally held that an act is criminally negligent when a man of ordinary prudence would foresee that the act would cause a high degree of risk of death or great bodily harm. The risk of death or great bodily harm must be great. (See cases collected 161 A.L.R. 10.) Whether the conduct of defendant was wanton or reckless so as to warrant conviction of manslaughter must be determined from the conduct itself and not from the resultant harm. (*Commonwealth* v. *Bouvier*, 316 Mass. 489 [55 N.E.2d 913].) Criminal liability cannot be predicated on every careless act merely because its carelessness results in injury to another. (*People* v. *Sikes*, 328 Ill. 64 [159 N.E. 293, 297].) The act must be one which has knowable and apparent potentialities for resulting in death. Mere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so. The fundamental requirement fixing criminal responsibility is knowledge, actual or imputed, that the act of the accused tended to endanger life. (*State* v. *Studebaker*, 334 Mo. 471 [66 S.W.2d 877, 881].)

In a case of involuntary manslaughter the criminal negligence of the accused must be the proximate cause of the death. (25 Cal.Jur.2d 667, § 153; *Cain* v. *State*, 55 Ga.App. 376 [190 S.E. 371, 375]; *State* v. *Darchuck*, 117 Mont. 15 [156 P.2d 173, 175]; *State* v. *Ramser*, 17 Wn.2d 581 [136 P.2d 1013, 1015-1016].)

It clearly appears from the definition of criminal negligence stated in *People* v. *Penny, supra,* 44 Cal.2d 861, that knowledge, actual or imputed, that the act of the slayer tended to endanger life and that the fatal consequences of the negligent act could reasonably have been foreseen are necessary for negligence to be criminal at all. Must a parent never

be more than the lack of ordinary care and precaution. It must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.' '' 40 C.J.S. 925, section 62: ''It must be shown that a homicide was not improbable under the facts as they existed which should reasonably have influenced the conduct of accused. . . . [I]t is ordinarily required that the negligence on which involuntary manslaughter may be based must be of a gross or flagrant character, such as would show wantonness or recklessness, or would evince a reckless disregard of human life or the safety of others, or indifference to consequences, equivalent to criminal intent.'' Montana has a statute identical with Penal Code, section 192. In *State* v. *Powell*, 114 Mont. 571 [138 P.2d 949], the court adopted the definition found in 26 Am.Jur. 299, section 210, adopted as the rule in this state in *People* v. *Penny*, 44 Cal.2d 861 [285 P.2d 926].

leave a young child alone in the house on risk of being adjudged guilty of manslaughter if some unforeseeable occurrence causes the death of the child? The only reasonable view of the evidence is that the death of Carlos was the result of misadventure and not the natural and probable result of a criminally negligent act. There was no evidence from which it can be inferred that defendant realized her conduct would in all probability produce death. There was no evidence as to the cause of the fire, as to how or where it started. There was no evidence connecting defendant in any way with the fire. There was no evidence that defendant could reasonably have foreseen there was a probability that fire would ignite in the house and that Carlos would be burned to death. The most that can be said is that defendant may have been negligent; but mere negligence is not sufficient to authorize a conviction of involuntary manslaughter. (*Cf. Williams* v. *State,* 88 Ga.App. 761 [77 S.E.2d 770]; *Turner* v. *State,* 65 Ga.App. 292 [16 S.E.2d 160]; *Jabron* v. *State,* 172 Miss. 135 [159 So. 406].)

The judgment and order denying a new trial are reversed.

Shinn, P. J., concurred.

Ford, J., did not participate.

Respondent's petition for a hearing by the Supreme Court was denied January 10, 1961.