[Crim. No. 1512. Fifth Dist. Mar. 13, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNA LEE PEABODY, Defendant and Appellant.

### COUNSEL

Roslyn Robbins Dienstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Marjorie Winston Parker, Joel E. Carey and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**FRANSON, J.**—The issue is the standard of conduct required for a violation of Penal Code section 273a, subdivision (1), which proscribes "wilfully" causing or permitting a child to be placed in a situation likely to produce great bodily harm or death. We hold that the standard of conduct condemned by the statute is that of criminal negligence and that the trial court's failure to so instruct the jury compels a reversal.

Because we are reversing on a point of law, we need only briefly summarize the evidence: Appellant brought her four-month-old child to the hospital because "the baby cried and his arm hurt." Upon examination, the baby was found to have multiple fractures of the rib cage on both sides and a fracture of the left arm. X-rays indicated that the fractures of the ribs on the right side were fresh while the rib fractures on the left side and of the arm had occurred some 10 to 14 days earlier. The fractures were of a type that might go unnoticed, although there was considerable swelling at the time the baby was examined.

Appellant stated that she did not know what had happened to the baby; however, she said that she had left him with his father for several hours the previous day while she had gone into town to pay bills. When she returned, the father told her the baby had fallen off the couch. Later, appellant said that possibly the injuries had occurred about a week earlier when her three-year-old daughter had fallen on the baby.

There was testimony that appellant was a loving and concerned mother. However, she admitted that the baby's father had a violent temper; that he had hit appellant on occasion; that he had tried to punish appellant's three-year-old daughter but appellant wouldn't let him; that he did not show much affection toward the baby. She said, however, that she had never seen him mistreat the baby.

There was some inconsistency in appellant's statements to various investigators before trial and her testimony at trial regarding how often she left the baby with his father. When asked if she had any idea that the baby was afraid of his father, she said: ". . . when he would holler or something when I was out of his sight, I, you know, had suspicions, but I just thought it was my imagination, so I just didn't think anything of it."

Medical evidence clearly showed that the baby's injuries could not have been accidentally caused, and it was assumed at the trial that the father had inflicted the injuries.

Penal Code section 273a, subdivision (1) provides: "(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or *willfully causes or permits such child to be placed in such situation that its person or health is endangered,* is punishable by imprisonment in the county jail not exceeding 1 year, or in the state prison for not less than 1 year nor more than 10 years." (Italics added.) Because there is no evidence that appellant herself inflicted the injuries upon her baby, the conviction can stand only under that portion of the statute which proscribes a person from *wilfully causing or permitting* a child to be placed in a health endangering situation under circumstances likely to produce great bodily harm or death.

The word, "wilfully," when applied to the intent with which an act is done, is defined in Penal Code section 7, subdivision 1 as simply a purpose or willingness to commit the act and does not require any intent to injure another. However, Penal Code section 20 states that in every crime there must exist a union or joint operation of act, intent, or *criminal negligence.* Section 20 makes criminal intent or negligence an invariable element of every crime unless excluded from the statutory definition either expressly or by necessary implication. *(People v. Stuart,* 47 Cal.2d 167, 171 [302 P.2d 5, 55 A.L.R.2d 705].) Moreover, Penal Code section 26, subdivision Six lists among the persons incapable of committing crimes those "who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."[1]

---

[1]Certain kinds of regulatory offenses not considered to be common law crimes and classified as "malum prohibitum" rather than "malum in se" are punishable despite the absence of criminal intent in any of the accepted senses. These crimes are usually

Where negligence is required as a predicate for a criminal act, a fundamental question arises: what quantum of negligence is required? Clearly, ordinary negligence sufficient for recovery in a civil action will not suffice; to constitute a criminal act the defendant's conduct must go beyond that required for civil liability and must amount to a "gross" or "culpable" departure from the required standard of care. (See *People* v. *Penny*, 44 Cal.2d 861, 879 [285 P.2d 926]; *People* v. *Rodriguez*, 186 Cal.App.2d 433, 440 [8 Cal.Rptr. 863]; 1 Witkin, Cal. Crimes, § 65, pp. 69-70.) The conduct must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. The conduct must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life. (*People* v. *Penny*, *supra*, 44 Cal.2d 861, 879.)

In *People* v. *Rodriguez*, *supra*, 186 Cal.App.2d 433, a defendant mother's conviction of involuntary manslaughter for the death of her two-year-old child from a fire in the house which took place during her absence (she was in a bar drinking and had left her small children without a babysitter) was reversed because of lack of proof of criminal negligence. The court applied the *Penny* rule and stated: "It is generally held that an act is criminally negligent when a man of ordinary prudence would foresee that the act would cause a high degree of risk of death or great bodily harm. The risk of death or great bodily harm must be great. [Citation.] Whether the conduct of defendant was wanton or reckless so as to warrant conviction . . . must be determined from the conduct itself and not from the resultant harm. [Citation.] Criminal liability cannot be predicated on every careless act merely because its carelessness results in injury to another. [Citation.] The act must be one which has knowable and apparent potentialities for . . . death [or great bodily injury]. Mere inattention or mistake in judgment . . . is not criminal unless the quality of the act makes it so. The fundamental requirement fixing criminal responsibility is knowledge, actual or imputed, that the act of the accused tended to endanger life." (186 Cal.App.2d at p. 440.) (See also *People* v. *Bernhardt*, 222 Cal.App.2d 567, 588 [35 Cal.Rptr. 401].)

referred to as "public welfare offenses" or "civil offenses" to distinguish them from "true crimes." (See 1 Witkin, Cal. Crimes, § 62, p. 66; Perkins on Criminal Law (2d ed.) pp. 784-798.) *Because a violation of Penal Code section 273a, subdivision (1) carries a possible prison sentence of up to 10 years, it obviously cannot be considered in the category of a public welfare offense.* (But see *People* v. *Beaugez*, 232 Cal.App.2d 650, 658, fn. 3 [43 Cal.Rptr. 28].)

In *People* v. *Beaugez, supra,* 232 Cal.App.2d 650, 657-658, in answering a constitutional challenge that the standard of care required by Penal Code section 273a, subdivision (1) was too vague, the court construed the word "wilfully" as used in the statute to mean "purposeful" or "with knowledge of consequences." However, it then applied the "rule of reason"[2] to the provision to condemn the "intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is *reasonably foreseeable."* (232 Cal.App.2d at p. 658, italics added.)

While *Beaugez* holds that section 273a, subdivision (1) does not require a criminal intent, but only a negligent placing of a child in a dangerous situation, it does not discuss the quantum of negligence or the extent of the departure from the ordinary standard of care required for a violation of the statute. As previously noted, *Beaugez* was concerned only with the determination of whether the statute was constitutionally vague. However the court stated: "Appellants urge that under the wording of the statute a parent might be prosecuted for permitting a child to go swimming or for sending him on an errand along traveled streets to a grocery store. But such conduct (assuming it to be applied as regards a child of suitable years to run errands or go swimming) would not justify prosecution under a *common sense* interpretation of the statute. In *People* v. *Buese,* 220 Cal.App.2d 802, we stated at page 806 [34 Cal.Rptr. 102]: '[C]ourts will not give strained meanings to legislative language, torturing that which is clear (or can be made clear by common sense interpretation) into opacity through a process of imaginative hypothesizing.' " (232 Cal.App.2d at p. 658, italics added.)

Manifestly, the standard of conduct proscribed by a criminal statute cannot be left to an ad hoc "common sense" interpretation as each case arises; the standard must be fixed and certain to the end that a trier of fact may objectively evaluate the defendant's conduct in light of that condemned by the statute. ■ For this reason, we hold that Penal Code section 273a, subdivision (1) requires proof of criminal negligence which means that the defendant's conduct must amount to a reckless, gross or culpable departure from the ordinary standard of due care; it must be such a departure from what would be the conduct of an

---

[2]As explained in *Beaugez,* the "rule of reason" is sometimes referred to as the "reasonably prudent man" test, or the "man of common intelligence" test. (See *Standard Oil Co.* v. *United States,* 221 U.S. 1 [55 L.Ed. 619, 31 S.Ct. 502]; *Ex parte Daniels,* 183 Cal. 636, 646-647 [192 P. 442, 21 A.L.R. 1172]; *People* v. *Curtiss,* 116 Cal.App.Supp. 771, 778-781 [300 P. 801].) The rule has been used to uphold many statutes against a claim of uncertainty. (See 41 Cal.L.Rev. 523, 525.)

ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. (*People* v. *Penny, supra,* 44 Cal.2d 861, 879; *People* v. *Rodriguez, supra,* 186 Cal.App.2d 433, 440; cf. *People* v. *Beaugez, supra,* 232 Cal.App.2d 650, 657-658; 1 Witkin, Cal. Crimes, § 65, pp. 69-70.)

■ While the trial court instructed the jury in the words of the statute, it failed to instruct on the appropriate standard of conduct proscribed by the statute. It failed to instruct on the meaning of the word "wilfully;" it gave no instructions on the principles of negligence, criminal or otherwise, nor did it instruct that mere inattention or mistake in judgment is insufficient to support a criminal conviction.

■ In criminal cases, the court, on its own motion, must instruct on the general principles of law relevant to the issues raised by the evidence. (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Iverson,* 26 Cal.App.3d 598, 604 [102 Cal.Rptr. 913].) The general principles of law governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case. (*People* v. *Wilson,* 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820].) At a minimum, it is the court's duty to see that the jury is adequately instructed on all elements of the crime of which the defendant is charged. (*People* v. *Sanchez,* 35 Cal.2d 522, 528 [219 P.2d 9]; *People* v. *Iverson, supra,* 26 Cal.App.3d 598, 604-605.)

Because of the prejudicial error in failing to properly instruct the jury, it becomes unnecessary to discuss appellant's contention that the evidence is insufficient to support the conviction.

The judgment of conviction is reversed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 28, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.