[No. B024374. Second Dist., Div. Six. June 20, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAY E. MARTIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g. [[/]].

COUNSEL

Taylor, McCord, Paul & Johnson and Robert L. McCord, Jr., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Mark Alan Hart, Donald E. De Nicola and Lisa Trankley Sato, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GILBERT, J.—California regulates the transportation and disposal of hazardous waste through the Hazardous Waste Control Act. (Health & Saf. Code,[1] § 25100 et seq.; Cal. Code Regs., tit. 22, § 66001 et seq.) The act affixes criminal liability for violation of a standard of ordinary care. We hold that the act is constitutional, that it is not vague or ambiguous, that it does not unlawfully delegate legislative authority, and that it is not superseded by federal law which exempts "empty" hazardous waste containers from regulation.

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

PROCEDURAL BACKGROUND AND FACTS

Ray E. Martin is the president and principal operating officer of the Chem-O-Lene Company, a chemical blending plant located next to the Ventura River in Ventura County. Martin also owns and operates Unico Chemicals, located in Bakersfield. Chemicals blended at Chem-O-Lene are sold and transported to Unico, which sells them for use in oil drilling operations.

On March 15, 1985, Martin was arrested and charged with knowingly disposing of hazardous waste, or knowingly causing others to dispose of hazardous waste, at the Chem-O-Lene plant in violation of section 25189.5, subdivision (b). In the week following his arrest, Martin directed employees at Chem-O-Lene to truck 182 metal barrels from Chem-O-Lene to the Unico facility. At Unico, a number of those barrels were smashed, their contents spilling into the ground.

[[/]]*

. . . . . . . . . . . . . . . . . . . .

Martin was convicted of two counts alleging the transporting and disposal of hazardous waste at the Unico facility in violation of section 25189.5, subdivision (c).[2] [[/]]*

The trial court suspended imposition of sentence and placed Martin on five years felony probation. The court also imposed a $75,000 fine and a mandatory penalty assessment of $52,500.

---

* See footnote, *ante,* page 699.

[2] Section 25189.5, subdivisions (b) and (c) read as follows: "(b) Any person who is convicted of knowingly disposing or causing the disposal of any hazardous waste, or who reasonably should have known that he or she was disposing or causing the disposal of any hazardous waste, at a facility which does not have a permit from the department issued pursuant to this chapter, or at any point which is not authorized according to this chapter shall, upon conviction, be punished by imprisonment in the county jail for not more than one year or by imprisonment in the state prison for 16, 24, or 36 months.

"(c) Any person who knowingly transports or causes the transportation of hazardous waste, or who reasonably should have known that he or she was causing the transportation of any hazardous waste, to a facility which does not have a permit from the department issued pursuant to this chapter, or at any point which is not authorized according to this chapter, shall, upon conviction, be punished by imprisonment in the county jail for not more than one year or by imprisonment in the state prison for 16, 24, or 36 months."

[[/]]* Martin argues that section 25189.5 is unconstitutionally vague, ambiguous, and constitutes an unlawful delegation of legislative authority; that the act does not regulate the transportation of empty containers, and that the trial court improperly instructed the jury in this regard; and that the statute may not be constitutionally construed as providing a criminal penalty for merely negligent conduct, and that the trial court erred in instructing the jury that it may convict him for negligent conduct.

[[/]]*

· · · · · · · · · · · · · · · · · · · · · · · · ·

I.

■ Martin contends that section 25189.5 is "vague, ambiguous and not susceptible to any definition that would have meaning to the average person" and so is unconstitutional. He specifically argues that the term "hazardous waste" as defined by the code "lack[s] any common sense basis upon which the average person can determine if they are in violation of the law, and provide[s] absolutely no objective standards or measurements" for the purpose of law enforcement. We disagree.

■ " '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].)" (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 763 [221 Cal.Rptr. 779, 710 P.2d 845].) Due process "requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citations.]" (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732], fn. omitted.)

"If an accused can reasonably understand by the terms of the statute that his conduct is prohibited, the statute is not vague [citation]. In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which the defendant is charged [citation]. Furthermore, in the field of 'regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed' than in statutes applicable to the general public (*Papachristou* v. *City of Jacksonville*

---

* See footnote, *ante,* page 699.

(1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116, 92 S.Ct. 839])." (*People v. Anderson* (1972) 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664].)

Section 25117 defines "hazardous waste" as: "[A] waste, or combination of wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may either: [¶] (a) Cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness.

"(b) Pose a substantial present or potential hazard to human health or environment when improperly treated, stored, transported, or disposed of, or otherwise managed. . . ."

■■ At the time of the events in this case, section 25124 defined "waste" in part as either of the following: "(a) Any material for which no use or reuse is intended and which is to be discarded. (b) Any recyclable material."

These statutory definitions for those who produce or handle hazardous waste provide adequate notice and adequate standards for enforcement for those who police such businesses. Regulated businesses "can be expected to consult relevant legislation in advance of action . . . [and] may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." (*Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 498 [71 L.Ed.2d 362, 371-372, 102 S.Ct. 1186], fns. omitted.) In order to convict Martin, the jury must have found that he knew or should have known that he was causing the disposal and transportation of hazardous waste. (§ 25189.5, subds. (b), (c).) The scienter requirement itself guarantees adequate notice. (*Hoffman Estates, supra,* at p. 499 [71 L.Ed.2d at p. 372]; *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) "Where as here dangerous substances are involved, and the probability of regulation is great, the trier of fact may infer knowledge on the part of those engaged in the business of using such substances. (*See United States* v. *Johnson & Towers, Inc.,* 741 F.2d 662, 669 (3rd Cir. 1984)." (*State* v. *McAllister* (Minn.Ct.App. 1987) 399 N.W.2d 685, 689.)

Further, the regulations promulgated by the Department of Health Services (the department) pursuant to the code contain a list of hundreds of materials designated potentially hazardous, and include mathematical formulas and scientific standards by which hazardous materials are identified. (Cal. Code Regs., tit. 22, §§ 66680-66723.) Even though statutes need not be of mathematical certainty (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 110 [33 L.Ed.2d 222, 228-229, 92 S.Ct. 2294]), these are.

A waste may be designated hazardous if it meets any of four criteria. (See generally Cal. Code Regs., tit. 22, art. 11, Criteria for Identification of Hazardous and Extremely Hazardous Wastes.) One of these is toxicity, which may be measured by the effect of the waste material on fish. (Cal. Code Regs., tit. 22, § 66696.) Another criteria is ignitability: a material is a hazardous waste if it is liquid and has a flash point of less than 140° Fahrenheit. (Cal. Code Regs., tit. 22, § 66702.) These and other tests were performed on chemical samples taken from Chem-O-Lene and Unico, and the results were entered into evidence.

## II.

■ Martin asserts that neither the code nor the department's regulations expressly regulate the transporting or managing of 55-gallon metal barrels which contain or contained hazardous waste. He also contends that state regulations are superseded by federal regulations which exempt empty barrels from regulation, and that the trial court erred in instructing the jury in this regard.

During deliberations the jury sent the following note to the court: "Relative to the question as to when a drum is empty of hazardous material, we heard testimony that Federal law specifies that a drum containing less than one (1) inch of material is considered empty. California law seems to state (*page 35 lines 4 and 6*) if *any* hazardous material remains in the drum the transportation of that drum constitutes transportation of a hazardous waste. Can we apply the Federal one inch limit or must we accept the California 'ANY' in determining the issue of count 4[?]"

The court's response, in relevant part, was: "Whether you find that a barrel contained more than one inch or less than one inch of a material or substance is not determinative of whether or not it is a hazardous waste."

Martin argues that the trial court's instruction was erroneous because California law does not define when a container of hazardous waste is empty, that federal standards therefore control, and that empty containers are exempt from regulation under the federal rules. The jury heard evidence that the barrels Martin ordered trucked to the Unico facility contained very little, if any, chemical residue.

The People urge that because the regulations expressly exempt empty one-gallon containers of household hazardous materials (see Cal. Code Regs., tit. 22, § 66300, subd. (g)), the absence of a similar exemption for empty, larger containers should be construed as an intent to regulate them. This seemingly logical argument teeters in light of section 25159.5, subdivi-

sion (b). At the time of trial that section read that all regulations adopted pursuant to the federal Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. § 6901 et seq.), governing, inter alia, the disposal and transportation of hazardous waste, are in effect in California "except that existing state laws or regulations which are more stringent than the corresponding federal regulations are also in effect in this state."[3] Thus, the lack of an express exemption in state law for empty 55-gallon barrels suggests that relevant RCRA provisions control.

Although the federal definition of "empty" applies here, California law, unlike federal law, regulates certain empty 55-gallon barrels as hazardous waste.

Federal regulations under RCRA expressly exempt empty containers which once held hazardous waste, and define an empty container as one containing no more than one inch of residue remaining on the bottom of the container or no more than 3 percent by weight of the total capacity of the container.[4] Martin correctly submits that in the absence of a more strict definition in California law of the term "empty container," the federal definition applies here. (§ 25159.5, subd. (b).) Neither the code nor the department's regulations define "empty."

California law, however, is more stringent than federal law in that it regulates these empty containers. At the time of the events in this case the code defined hazardous waste as, inter alia, "[a]ny recyclable material." (§ 25124, subd. (b).) The regulations, in turn, contain a list of Recyclable Hazardous Waste Types, which include "[u]nrinsed empty containers of iron or steel used for pesticides or other hazardous chemicals . . . ." (Cal. Code Regs., tit. 22, § 66796, subd. (b)(7).) The same rule provides an example of recycling methods appropriate to 55-gallon containers. (Cal. Code Regs., tit. 22, § 66796, subd. (b)(7)(B).) A container is defined as "any device that is open or closed, and portable in which a material can be

---

[3] In 1987, section 25159.5, subdivision (b) was amended to read in relevant part that "any state statute or regulation which is more stringent or more extensive than a federal regulation shall supersede the federal regulation." (Stats. 1987, ch. 981, § 1.)

[4] 40 Code of Federal Regulations section 261.7 reads in part: "(a)(1) Any hazardous waste remaining in either (i) an empty container or (ii) an inner liner removed from an empty container . . . is not subject to regulation . . . .

". . . . . . . . . . . . . . . . . . .

"(b)(1) A container . . . that has held any hazardous waste . . . is empty if: "(i) All wastes have been removed that can be removed using the practices commonly employed to remove materials from that type of container, e.g., pouring, pumping, and aspirating, and

"(ii) No more than 2.5 centimeters (one inch) of residue remain on the bottom of the container or inner liner, or

"(iii)(A) No more than 3 percent by weight of the total capacity of the container remains in the container . . . ." (Italics added.)

stored, handled, treated, transported, recycled, or disposed of." (Cal. Code Regs., tit. 22, § 66028.)

These provisions show that empty (as that term is defined in RCRA) 55-gallon barrels which contained hazardous chemicals are considered to be recyclable hazardous waste, and are subject to the Act.[5] Recently the department adopted regulations expressly requiring that generators and transporters of recyclable material comply with all regulations concerning hazardous waste. (See Cal. Code Regs., tit. 22, §§ 66798, 66800.) Although these regulations were not in effect at the time of the violations considered here, they express what was previously contained in the regulatory scheme.

Martin knew that the barrels were recyclable. His defense to the unlawful disposal count was, in part, that he tried to sell the barrels to a recycler. This is sufficient to charge him with knowledge that the barrels were subject to regulation.

Martin argues that section 66028, which defines containers as those devices having a capacity of greater than 110 gallons, suggests that smaller containers are not regulated. That definition applies only to "annual inspection and the issuance of the certificates of compliance required by Articles 5 and 6" of the rules. (See Cal. Code Regs., tit. 22, §§ 66434; 66448; 66545, subd. (d).) Neither article 5 nor 6 concern the definition of hazardous waste or limit the prohibition against transporting such waste to nonpermitted facilities. (See, e.g., Cal. Code Regs., tit. 22, § 66545, subd. (b).)

Martin asserts that the department neglected to exercise its authority to waive enforcement of its regulations where the department determines that the waste "is insignificant or unimportant as a potential hazard to human health . . . ." (§ 25143, subd. (a)(2)(A).) Martin overlooks California Code of Regulations, title 22, section 66310, subdivision (a)(1) which provides procedures for obtaining a variance from hazardous waste regulations where the waste is "[i]nsignificant as a potential hazard to human health and safety, livestock, or wildlife because of its small quantity, low concentration or physical or chemical characteristics . . . ." There is no evidence that Martin applied for or received a variance, and the jury could properly conclude that the barrels at issue here were regulated hazardous waste under the laws of California.

---

[5] In 1985 the Legislature adopted section 25143.2, which exempts from regulation recyclable materials meeting certain specified conditions. This statute, along with its 1988 amendments, is not dispositive here because it became effective after the dates of the events alleged in this case. Nevertheless, the trial court, over the People's objection, instructed the jury that it could apply several of these exemptions in deciding whether Martin violated the law in transporting the barrels. By convicting Martin, the jury found these exemptions did not apply.

### III.

Martin contends that the Legislature, by directing the department to "prepare, adopt and . . . revise . . . a listing of the wastes which are determined to be hazardous . . ." (§ 25140), delegated to the department the authority to broaden and alter the definition of hazardous waste. He argues that such a delegation is improper when those definitions are applied to criminal sanctions such as those under section 25189.5.

"An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy decisions. . . . The Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and to carry it into effect." (*People* v. *Wright* (1982) 30 Cal.3d 705, 712-713 [180 Cal.Rptr. 196, 639 P.2d 267].)

Here, the Legislature expressed its intent to protect public health and environmental quality by establishing regulations for the handling, treatment, recycling and disposing of hazardous wastes, and granted to the department the authority to implement such a program. ($ 25101.) The Legislature defined hazardous waste (§ 25117) and directed the department to prepare a list designating wastes which are hazardous and to adopt by regulation "criteria and guidelines for the identification of hazardous wastes." (§§ 25140, 25141.) This is a reasonable grant of power to an administrative agency, providing adequate standards for administrative application of the statutory scheme. (*People* v. *Wright, supra,* 30 Cal.3d at p. 713.)

That the department's list of hazardous waste and criteria for identifying hazardous waste is used in a criminal prosecution does not make this an unconstitutional delegation of legislative power. The Legislature, not the department, created the criminal sanction and fixed the penalties. (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 369 [55 Cal.Rptr. 23, 420 P.2d 735]; *Moore* v. *Municipal Court* (1959) 170 Cal.App.2d 548, 556 [339 P.2d 196].) "A rule does not assume 'a legislative character because the violation thereof is punished as a public offense.' (*United States* v. *Grimaud* (1911) 220 U.S. 506, 521 [55 L.Ed. 563, 31 S.Ct. 480].)" (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at p. 369.)

### IV.

In order to convict Martin of violating subdivisions (b) and (c) of section 25189.5, the jury must have found that he knowingly caused, or

"reasonably should have known" that he caused, the disposal or transportation of hazardous waste at or to a facility which did not have a permit. Martin asked the court to instruct the jury that whether he "reasonably should have known" about the disposal or transportation must be measured against a criminal negligence standard of care, i.e., that the defendant exhibited a gross indifference to the consequences of his acts with a reckless, gross, or culpable departure from the ordinary standard of care, or with gross or reckless disregard for the consequences of his acts.[6] (See, e.g., *People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780]; former CALJIC No. 4.45.1 (1984), now CALJIC No. 3.36 (5th ed. 1988).)

The court rejected both of Martin's proposed instructions and instead instructed the jury that "[i]n deciding whether in the absence of his actual knowledge the defendant reasonably should have known he was disposing or causing the disposal of or transporting or causing the transportation of hazardous waste, you are instructed that you may consider any proved facts from which it may, in the exercise of reason and logic, be concluded that the defendant reasonably should have known, including but not limited to any of the following: [7] . . . When a person commits an act or makes an omis-

---

[6] Martin proposed that the court give either of these two instructions: 1) "The term 'reasonably should have known' as that phrase is used in my instructions means that the defendant must have foreseen the consequences and that there was a reckless, gross, or culpable departure from the ordinary standard of due care that would be exercised by a reasonably prudent person. There must be a gross indifference to the consequences of the act or omission and it must be judged from the conduct itself and not the resultant harm."

2) "As used in my instructions, the term 'reasonably should have known' meand [sic] that with the exercise of due care and caution, must have anticipated or foreseen the existance [sic] of the facts in question, and recklessly failed to act. It means the Defendant must have reasonably anticipated or foreseen specific acts of disposal or transportation of a substance he could reasonably anticipated [sic] or foreseen to be hazardous waste, and with gross or reckless disregard of these thoughts, failed to prevent such acts. [¶] Thus, in order to find the defendant guilty on the theory that he reasonably should have known he was disposing of or transporting hazardous waste, you must be convinced beyond a reasonable coubt [sic] that he reasonably anticipated or foresaw specific acts of disposal or transportation by himself or others acting under his direction and that he reasonably ancitipated [sic] or foresaw that the substance to be disposed of or transported would be hazardous waste, and with gross or reckless disregard of this anticipation, failed to prevent such acts."

[7] The court listed the following factors which the jury could take into consideration: "The time and place of disposal or transportation, if any; the physical presence or absence of the defendant at the time and place of any disposal or transportation; and if absent, the period of time from any disposal or transportation until his return; the physical characteristics of the disposed or transported material, including its chemical components, odor, viscosity, weight, visual appearance and quantity; the circumstances surrounding the disposal or transportation; the location, type and configuration of the materials [sic] usual containment vessel; the motive, interest or bias, if any, of the person or persons who disposed or transported or participated in the disposal or transportation of the material; the structural and operational integrity of the mixing plant mechanism; the structural and operational integrity of the tanks, tank farms, valve, pipes, barrels and other containers; the manner and extent of the defendant's personal supervision of the plant operations and transportation of the materials; the

sion through misfortune or by accident under circumstances that show he did not intend to do the acts or omission which caused the disposal of hazardous waste or reasonably could not have known that his act or omission would result in the disposal of hazardous waste, then he does not thereby commit the crimes charged in this Information."

We agree with Martin that this instruction allowed the jury to apply a civil negligence standard of conduct in determining whether he "reasonably should have known" that he caused the transportation or disposal of hazardous waste. We do not agree that this instruction was error.

Martin contends that the phrase "reasonably should have known" is ambiguous, and that we must therefore construe it in his favor and in accordance with Penal Code section 20, which states that "[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." ■ We recognize that when a penal statute is reasonably susceptible of two constructions, the one more favorable to the defendant should be adopted. (*In re Tartar* (1959) 52 Cal.2d 250, 256-257 [339 P.2d 553].) "However, this rule is not inflexible and courts decline to apply it where it leads to results that are contrary to legislative intent or that fail to prevent the harm that is identified in the statute . . . ." (*People v. Davis* (1985) 166 Cal.App.3d 760, 766 [212 Cal.Rptr. 673].)

In *People v. Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850], our Supreme Court held Penal Code section 20 is "an invariable element of every crime unless excluded expressly or by necessary implication." (At p. 801, fn. omitted; see also *In re Dennis B.* (1976) 18 Cal.3d 687, 696 [135 Cal.Rptr. 82, 557 P.2d 514].) Here we conclude that the Legislature intended to impose criminal liability upon those who unlawfully transport and dispose of hazardous waste, even where their conduct falls short of gross negligence or recklessness.

■ Normally, persons who commit an act through misfortune or by accident with no evil design, intention or culpable negligence are not criminally responsible for the act. (Pen. Code, § 26; *People v. Calban* (1976) 65 Cal.App.3d 578, 584 [135 Cal.Rptr. 441].) "[T]o constitute a criminal act the defendant's conduct must go beyond that required for civil liability and

manner and extent of the defendant's personal supervision of plant and delivery employees; disposals occurring before February 14th, 1985, if any, of which the defendant had actual knowledge; instructions by the defendant, if any, to others in his employ concerning the mixing, storage, handling, disposal or transportation of materials; labels or other information in the possession of the defendant concerning the materials being mixed, stored, handled, disposed or transported; the destination of the transported materials; information, if any, provided to the defendant by government agencies regarding requirements of transportation, mixing, handling and disposal of materials."

must amount to a 'gross' or 'culpable' departure from the required standard of care. [Citations.] The conduct must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. The conduct must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life." (*People* v. *Peabody, supra,* 46 Cal.App.3d at p. 47.)

■ "The only exceptions to this general rule are so-called 'public welfare' or '*malum prohibitum*' crimes which are punishable despite the absence of any criminal intent or criminal negligence." (*People* v. *Calban, supra,* 65 Cal.App.3d at p. 584.) "These public welfare crimes are most often based upon the violation of statutes purely regulatory in nature and involving widespread injury to the public. [Citation.]" (*People* v. *Chevron Chemical Co.* (1983) 143 Cal.App.3d 50, 53-54 [191 Cal.Rptr. 537].) Those who violate these public welfare crimes may be held strictly liable for their conduct. (*United States* v. *Dotterweich* (1943) 320 U.S. 277, 281 [88 L.Ed. 48, 51-52, 64 S.Ct. 134]; *Chevron Chemical Co., supra,* at p. 53 and cases cited therein.)

Strict liability offenses are denoted where " '. . . qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense . . . .' " (*In re Marley* (1946) 29 Cal.2d 525, 529 [175 P.2d 832].) ■ Section 25189.5 includes knowledge or negligence as an element of the crime, and so is not a strict liability offense.

Yet, section 25189.5 is a public welfare offense in that it protects the public health, safety and welfare by regulating industries which use hazardous materials. The section, as part of the Hazardous Waste Control Act, was enacted by the Legislature "[i]n order to protect the public health and the environment and to conserve natural resources" in the light of "[l]ongterm threats to public health and to air and water quality . . . posed by the landfill disposal of many types of untreated hazardous wastes and by the inappropriate handling, storage, use, and disposal of hazardous wastes." (§§ 25101, subd. (a), 25100, subd. (b).) Therefore, although section 25189.5 relies upon criminal sanctions, its primary purpose is regulation. (See *People* v. *Vogel, supra,* 46 Cal.2d at p. 801, fn. 2.) For this reason, we find that although the Legislature chose not to do so, it could have made section 25189.5 a strict liability offense.

Martin correctly points out that strict liability public welfare offenses "usually involve light penalties and no moral obloquy or damage to reputation." (*People* v. *Vogel, supra,* 46 Cal.2d at p. 801, fn. 2; *Morissette* v. *United*

*States* (1952) 342 U.S. 246, 256 [96 L.Ed. 288, 296-297, 72 S.Ct. 240].) Martin was sentenced to felony probation for his conviction for violating section 25189.5, subdivisions (b) and (c).[8] Light penalties are not, however, the sine qua non of strict liability offenses. See *United States* v. *Ayo-Gonzalez* (5th Cir. 1976) 536 F.2d 652, 661, where the Fifth Circuit Court of Appeals listed several federal decisions upholding strict liability statutes with severe sentences. These cases include *United States* v. *Freed* (1971) 401 U.S. 601 [28 L.Ed.2d 356, 91 S.Ct. 1112] (possession of unregistered firearm, punishable by 10 years in prison, a $10,000 fine, or both); *United States* v. *Dotterweich, supra,* 320 U.S. 277 (misbranded or adulterated drugs, punishable by a $1,000 fine and/or one year for the first offense, $10,000 fine and/or three years for subsequent offenses); and *United States* v. *Balint* (1922) 258 U.S. 250 [66 L.Ed. 604, 42 S.Ct. 301] (unlawful drug sale punishable by five years in prison).

Martin cites *People* v. *Peabody, supra,* 46 Cal.App.3d 43, where the Court of Appeal held that a violation of Penal Code section 273a required proof of criminal negligence. In a footnote, the court said that because the violation carried a possible prison sentence of up to 10 years, *"it obviously cannot be considered in the category of a public welfare offense."* (*Id.* at pp. 46-47, fn. 1.) The statute in question in *Peabody* prohibits child neglect, and we doubt it would qualify as a regulatory or public welfare offense whatever the penalty. (See *Morissette* v. *United States, supra,* 342 U.S. 246.)

Because the Legislature could have chosen to make section 25189.5 an offense punishable without proof of any degree of fault, it follows that it could instead choose to punish those who reasonably should have known they were transporting or disposing of hazardous waste at or to a nonpermitted facility.

■ Lawmakers have wide latitude to declare an offense and to exclude, or include, elements of knowledge and diligence. (*Lambert* v. *California* (1957) 355 U.S. 225, 228 [2 L.Ed.2d 228, 231, 78 S.Ct. 240].) This is especially true where the offense is regulatory in nature, but does not im-

---

[8] Violations of subdivisions (b) and (c) of section 25189.5 are punishable by imprisonment in the county jail for not more than one year or by imprisonment in the state prison for 16, 24, or 36 months. Subdivision (d) provides that the court "shall also impose upon a person convicted of violating subdivision (b) or (c) a fine of not less than five thousand dollars ($5,000) or more than one hundred thousand dollars ($100,000) for each day of violation except as further provided in this subdivision. If the act which violated subdivision (b) or (c) caused great bodily injury or caused a substantial probability that death could result, the person convicted of violating subdivision (b) or (c) may be punished by imprisonment in the state prison for up to 36 months, in addition to the term specified in subdivision (b) or (c), and may be fined up to two hundred fifty thousand dollars ($250,000) for each day of violation."

pose strict liability. In areas subject to strong police regulation, the state may impose "the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." (*United States* v. *Dotterweich, supra,* 320 U.S. at p. 281 [88 L.Ed. at p. 51].)

In *United States* v. *Park* (1975) 421 U.S. 658 [44 L.Ed.2d 489, 95 S.Ct. 1903], the United States Supreme Court affirmed the criminal conviction of a corporate president for breach of his duty to use care to maintain the physical integrity of the corporation's food products. The court held that the state may impose upon corporate agents "not only a positive duty to seek out and remedy violations when they occur but also . . . a duty to implement measures that will insure that violations will not occur." (*Id.,* at p. 672 [44 L.Ed.2d at p. 501].) As Justice Stewart opined in his dissent on other grounds: "This is the language of negligence, and I agree with it." (*Id.,* at p. 679 [44 L.Ed.2d at p. 505].)

One commentator predicted that "[m]ost courts are likely to agree with Justice Stewart . . . and conclude that *Park* supports the imposition of criminal liability only where there is a departure from a standard of care. Certainly the [majority] opinion is . . . replete with language which smacks of negligence . . . ." (Abrams, *Criminal Liability of Corporate Officers for Strict Liability Offenses—A Comment on Dotterweich and Park* (1981) 28 UCLA L.Rev. 463, 469; but see Brickey, *Criminal Liability of Corporate Officers for Strict Liability Offenses—Another View* (1982) 35 Vand.L.Rev. 1337.)

Negligence standards for criminal conduct are not unknown in regulatory offenses. Congress recently amended the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.) to impose criminal penalties of up to two years in prison and maximum fines of $50,000 per day for those who negligently violate the Act or who negligently introduce into a sewer system or publicly owned water treatment plant a pollutant or hazardous substance which they reasonably should have known could cause injury to person or property. (33 U.S.C. § 1319(c)(1); see also *People* v. *Cramblit* (1976) 62 Cal.App.3d 475, 480-481 [133 Cal.Rptr. 232]; *People* v. *Cramblit* (1978) 84 Cal.App.3d 437, 443-444 [148 Cal.Rptr. 440] [civil standard of negligence is sufficient to sustain a criminal conviction of a scrap metal dealer for failing to exercise due diligence to determine if seller of water meters had legal right to do so]; Pen. Code, § 496a.)

We have no doubt that in enacting section 25189.5, the Legislature intended to impose criminal liability upon those who reasonably should have known they were transporting or disposing of hazardous waste at an unpermitted facility, without requiring gross negligence or recklessness.

The Legislature knows the difference between "reasonably should have known" and acting with reckless disregard. (See, e.g., § 25189.6, which immediately follows § 25189.5, where the Legislature made it a crime for anyone who "knowingly, or with *reckless disregard* for the risk, treats, handles, transports, or stores any hazardous waste in a *manner which* causes any unreasonable risk of fire, explosion, serious injury, or death . . . ." [Italics added.])

We conclude that section 25189.5, although not a strict liability offense, is part of a regulatory scheme where it is permissible to find criminal liability based on the violation of a standard of ordinary care.

[[/]]*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment of conviction is affirmed.

Stone (S. J.), P. J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 27, 1989.

---

*See footnote, *ante,* page 699.