[No. E024597. Fourth Dist., Div. Two. May 22, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ROBERT KINKEAD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4.

**COUNSEL**

Paul R. Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez, Janelle M. Boustany and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAMIREZ, P. J.**—A jury convicted Michael Robert Kinkead of child endangerment (Pen. Code, § 273a, subd. (a))[1] and found true the allegation that it resulted in the victim's death (§ 12022.95). In bifurcated proceedings, Kinkead pled guilty to two counts of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and one count each of being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), possessing 28.5 grams or less of marijuana (Health & Saf. Code, § 11352, subd. (b)), keeping a lost credit card (§ 485) and possessing methamphetamine for sale (Health & Saf. Code, § 11378), the latter while on bail (§ 12022.1). He was sentenced to prison for 13 years four months and appeals, claiming that the jury was misinstructed, the evidence is insufficient to support his conviction of child endangerment and the true finding/admission of his enhancements should be reversed. We reject his contentions and affirm.

FACTS

Kinkead, a regular user of methamphetamine, had gone for days without sleep due to his ingestion of the drug and had also ingested marijuana and a

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

wine cooler. He wanted to sleep when he lay down on the sofa with his 30-pound three-year-old daughter, the victim, on the night of October 13, 1999. The following night, the victim's mother found the child dead under Kinkead's sleeping body and the sofa cushions. The victim had died of asphyxia due to chest compression. The prosecution presented the testimony of a friend of Kinkead's that methamphetamine keeps one who ingests it awake for days at a time; then, the user sleeps for days. The facts of the other offenses are irrelevant to this appeal.

1. *Jury Instructions*

a. *Failure to Instruct on Willfulness*[2]

One of the child endangerment provisions of section 273a, subdivision (a), under which Kinkead was charged, punishes anyone who "under circumstances or conditions likely to produce great bodily harm or death, . . . having the care or custody of any child, . . . willfully . . . permits that child to be placed in such a situation where his or her person or health is endangered . . . ."

The jury was instructed that as to this crime there must exist a union of act (or conduct) and criminal negligence. Further, the jury was instructed that section 273a, subdivision (a) prohibited anyone who, "under circumstances or conditions likely to produce great bodily harm or death[,] . . . as a result of criminal negligence,[3] permitted the [victim] to be placed in a situation where her person or health was endangered . . . ." The elements of section

---

[2]Kinkead also contends that his due process rights were violated when he was charged with violating section 273a because the amended information, by including the requirement of criminal negligence and omitting the requirement of willfulness, did not actually charge him with an offense. The first matter is rejected elsewhere in this opinion. As to the absence in the information of an allegation that Kinkead's acts were "willful," his failure to demur to it or to bring a motion in arrest of judgment forecloses his claim. (§§ 1004, 1012; *People v. Schwarz* (1927) 201 Cal. 309, 312 [257 P. 71]; *People v. LaBow* (1930) 106 Cal.App. 47, 48-49 [288 P. 880] [and cases cited therein].) We decline Kinkead's invitation to request supplemental briefing on this point. At oral argument, he cited authority in support of his contention that the matter had not been waived. The People had the option to respond further, but did not. Additional briefing, therefore, is unnecessary. Moreover, the contention in Kinkead's opening brief that the amended information failed to state an offense was made without substantive analysis, which calls for an equally unsubstantial disposition by this court. (See *People v. Waidla* (2000) 22 Cal.4th 690, 726, fn. 8 [94 Cal.Rptr.2d 396, 992 P.2d 46].)

[3]Criminal negligence was defined as follows: " 'Criminal negligence' means conduct which is more than ordinary negligence. Ordinary negligence is the failure to exercise ordinary or reasonable care. [¶] 'Criminal negligence' refers to a negligent act or acts which is or are aggravated, reckless or flagrant and which is or are such a departure from what would be the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to a proper regard for human life or danger to human life or to constitute indifference to the consequences of that act or those acts. The facts must be such that the consequences of

273a, subdivision (a) were provided to the jury as a slight restatement of the foregoing.

In relation to the section 12022.95 enhancement alleged in connection with the section 273a, subdivision (a) charge, which the jurors found to be true, the jurors were instructed that the People must prove that, "[a] person having the care or custody of a child . . . [¶] . . . [u]nder circumstances likely to produce great bodily harm or death . . . [¶] . . . [p]ermit[ted] the child to be injured or harmed . . . and [¶] . . . [t]he injury or harm result[ed] in death." As to this allegation, the jury was told that there must exist a union or joint operation of act or conduct and general criminal intent.[4] Specifically, the jurors were told: "When a person *intentionally* does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." (Italics added.) This allegation was elsewhere restated for the jury as follows: "[It is alleged that] . . . Kinkead[] did *wilfully*[5] and unlawfully, under circumstances likely to produce great bodily harm and death, having the care and custody of a child, under circumstances likely to produce great bodily harm and death, permit that child to be injured or harmed which resulted in death . . . ." (Italics added.)

■ Although not framed by Kinkead as such, the issue here is whether Kinkead was prejudiced by the failure of the instructions given on child endangerment to require that the jury find he *willfully* permitted the victim to be placed in a situation where the latter's person or health was endangered.[6] In light of the requirement, set forth above, as to the enhancement allegation that the jury find that Kinkead *intentionally* permitted the victim to be

the negligent act or acts could reasonably have been foreseen and it must appear that the death or danger to human life was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrantly negligent act."

[4]The jury was also instructed that as to this allegation, there must exist a union or joint operation of act or conduct and criminal negligence.

[5]CALJIC No. 1.20, which would have also been the appropriate definition of "willfully" for purposes of section 273a, subdivision (a) (*People v. Lee* (1991) 234 Cal.App.3d 1214, 1221 [286 Cal.Rptr. 117]; *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1467-1469 [251 Cal.Rptr. 904]; *People v. Sheffield* (1985) 168 Cal.App.3d 158, 165 [214 Cal.Rptr. 40]; *People v. Pointer* (1984) 151 Cal.App.3d 1128, 1134 [199 Cal.Rptr. 357]; *People v. Peabody* (1975) 46 Cal.App.3d 43, 46 [119 Cal.Rptr. 780]; *People v. Beaugez* (1965) 232 Cal.App.2d 650 [43 Cal.Rptr. 28]), was given to the jury at the request of the prosecutor.

[6]We note, however, that *People v. Rippberger* (1991) 231 Cal.App.3d 1667, 1682 [283 Cal.Rptr. 111], held as follows: "[T]he crime of felony child endangerment does not require proof by the prosecution of any subjective knowledge on the part of defendants that their actions were not helping [the victim] or were deleterious to the child . . . . Although . . . section 273a, subdivision (1), does use the word 'willfully,' the crime described is one of criminal negligence and not of malice or specific intent. (*People v. Pointer*[, *supra*,] 151 Cal.App.3d 1128, 1134 . . . ; *People v. Peabody*[, *supra*,] 46 Cal.App.3d 43, 46-49 . . . .)"

injured or harmed, and the restatement of that allegation to the effect that Kinkead *willfully* permitted the victim to be harmed or injured, we find no error.[7]

We disagree with Kinkead's contention that the holding in *People v. Sargent* (1999) 19 Cal.4th 1206 [81 Cal.Rptr.2d 835, 970 P.2d 409] (*Sargent*) is relevant to the propriety of the instructions given here. In *Sargent*, the California Supreme Court rejected the defendant's contention that criminal negligence instructions, rather than general criminal intent instructions, were appropriate for active infliction of injury on a child (versus, as here, child endangerment).[8] Although dicta, as part of its analysis, the court cited a multitude of other opinions holding that criminal negligence[9] is required[10] for child endangerment. (*Id.* at pp. 1216-1219.)[11] Even this dicta, however, did not touch on the requirement, which is the true relevant issue here, that the defendant's acts or conduct in permitting the child to be endangered be willful. Section 273a, subdivision (a) expressly requires as much and we do not dispute this. The crucial question here is whether the failure to include

[7]Kinkead's unsupported assertion that instructions given in reference to the enhancement are irrelevant to the charged offense is nonsense. If, due to a finding in connection with an enhancement, the jury necessarily found a fact which is essential to support a conviction of the charged offense, any error in the failure to require that fact to be found expressly in connection with the charged offense is nonprejudicial.

[8]In footnote 5 of *Sargent*, the court stated, "Because in this case we address only the mens rea for direct infliction of . . . pain or . . . suffering, the issue of what mens rea is required for [child endangerment] . . . is not before us." (*Sargent, supra,* 19 Cal.4th at p. 1216, fn. 5.)

[9]Among these cases is the California Supreme Court's opinion in *Walker v. Superior Court* (1988) 47 Cal.3d 112 [253 Cal.Rptr. 1, 763 P.2d 852]. In *Walker*, the court noted that criminal negligence was the standard of culpability for child endangerment. (*Id.* at p. 135.) We also note that despite Kinkead's objections to the holding of *People v. Peabody, supra,* 46 Cal.App.3d 43, the California Supreme Court cited it with approval in *Sargent*. (*Sargent, supra,* 19 Cal.4th at pp. 1216-1217, 1219.)

[10]In deference to Justice Mosk's concurrence in *Sargent*, we avoid labeling the criminal negligence requirement of child endangerment as a mens rea and concede that the mens rea of this crime, in the strict sense, is willfulness, although we note that the majority in *Sargent* considers criminal negligence to be a mens rea. (*Sargent, supra,* 19 Cal.4th at p. 1222 ["We note this inquiry, as a practical matter, will in most cases not differ significantly from the imposition of a *criminal negligence mens rea* element into the language 'under circumstances or conditions likely to produce great bodily harm or death.' " (Italics added.)].) That is not to say, however, that criminal negligence is irrelevant to the crime, as Kinkead urges. Certainly, it is not. In *People v. Sanders* (1992) 10 Cal.App.4th 1268, 1273 [13 Cal.Rptr.2d 205], the Court of Appeal held that the elements of child endangerment were 1) the defendant having care and custody of the victim, 2) under circumstances likely to produce great bodily harm or death, 3) commits criminal negligence. The court described the crime as "passive conduct unaccompanied by criminal intent." (*Id.* at p. 1274.)

[11]Kinkead cites *People v. Smith* (1984) 35 Cal.3d 798 [201 Cal.Rptr. 311, 678 P.2d 886], which *Sargent* also cited, for the proposition that criminal negligence is irrelevant to the charged offense. However, *Smith*, unlike this and the numerous other cases cited by *Sargent*, involved active infliction of injury by the defendant, not child endangerment.

the willful requirement as part of the instructions on section 273a, subdivision (a) prejudiced Kinkead, and our conclusion, as stated above, is no. To the extent Kinkead appears to suggest that *Sargent* stands for the proposition that criminal negligence is not relevant to liability for endangerment under section 273a, subdivision (a), he is entirely incorrect.

b. *Failure to Identify the Act Constituting the Offense*

■ The charging document alleged that Kinkead "permit[ted the victim] to be placed in a situation where her person or health was endangered." As stated above, the jury was informed that in order to convict Kinkead of a violation of section 273a, subdivision (a), it had to find that he "permitted [the victim] to be placed in a situation where her person or health was endangered . . . ." In argument to the jury, the prosecutor contended that Kinkead's culpable act was sleeping near the much smaller victim, knowing that he was "crashing" from sleepless days, due to the ingestion of methamphetamine, having also ingested marijuana and a wine cooler. We are at a loss to understand Kinkead's present contention that the prosecutor failed to identify for the jury what the dangerous situation was.

In an effort to show that the argument made by the prosecutor or the instructions given were somehow defective, Kinkead cites a portion of *Sargent*, a case we have already stated is distinguishable because it deals with active infliction of injury and not child endangerment. This crucial fact aside, Kinkead again misconstrues what the court held in *Sargent, supra*, 19 Cal.4th 1206. Therein, the court refuted the defendant's contention that a requirement of criminal negligence be grafted onto the active infliction of injury on a child due to the existence of the element of the offense that the defendant's acts be under circumstances or conditions likely to produce great bodily harm. The court explained that this element is not the equivalent of criminal negligence. *Sargent* makes clear that the intent requirement of section 273a, subdivision (a) applies to the act, not to the circumstances of the offense, which is the above mentioned element.[12] Kinkead fails to cite to any portion of the prosecutor's argument in which she urged the jury to apply the relevant intent element, which is willfulness, to the circumstances of the offense, rather than to the act of permitting the victim to be endangered. In fact, the prosecutor never mentioned willfulness in connection with the charged offense.

■ Kinkead also now objects, for the first time, to the italicized portion of the statements by the prosecutor during argument: "[To find criminal negligence] we are not going to be looking at what the defendant could

---

[12]However, see the quotation from *Sargent* in footnote 10, *ante*.

foresee, what he did foresee, what he thought would be a consequence of his actions, but you need to put a careful person, ordinary prudent, careful person in his shoes. . . . The standard is not what he thought. . . . [The question is] would the consequences of what he did reasonably have been foreseen by a careful, prudent person? [¶] . . . *In order to answer whether the consequences were foreseeable, here's what you need to look at. Would a careful person have foreseen that him being in the condition that he's in, meth, smoke a joint, drink a wine cooler, up a couple of days, laying [sic] down with a little girl . . . a fraction of his size, on a sofa, knowing he's ready to [crash]. . . .*[13] *Would a careful person have foreseen danger to [the victim]? And the answer is yes, of course."*

The instructions given on criminal negligence, with which Kinkead here takes no issue (save that they should not have been given at all, a position we have already rejected) provided: "The facts must be such that the consequences of the negligent act or acts could reasonably have been foreseen. . . ." We fail to see how the prosecutor's argument conflicted with this instruction. Certainly, nothing in *Sargent* holds that such argument was improper.

Finally, we disagree with Kinkead's assertion that the trial court was obliged to give the jury any further guidance as to what it was that the prosecutor was contending constituted the acts and intent which comprised the crime. The prosecutor made perfectly clear to the jury her theory of liability. Including that theory in the instructions would have been unnecessary and inappropriate.

## 2. *Insufficiency of the Evidence*

Although Kinkead contends that there was insufficient evidence that he should have known that by lying down on the sofa with the 30-pound victim while he was knowingly crashing from days of sleeplessness due to methamphetamine ingestion and having also ingested marijuana and a wine cooler, it was reasonably foreseeable the victim would be endangered, he provides no persuasive argument on this score.

---

[13]Kinkead takes an unnecessarily narrow and misleading view of the prosecutor's argument by contending, repeatedly, that the only act the prosecutor accused him of committing was simply lying down on the couch with the victim. Although Kinkead repeatedly asserts in relation to this contention that the victim died as a result of being wedged between him and the cushions of the sofa, he more accurately describes the cause of death in his statement of facts as follows: "[The victim] was dead from 'mechanical asphyxia' caused by the weight of . . . Kinkead's body having compressed [the victim's] chest so that she could not inhale."

### 3. *The Enhancement for Willfully Causing or Permitting an Injury Resulting in Death*

As stated before, it was alleged, pursuant to section 12022.9, that Kinkead "did wilfully and unlawfully, under circumstances likely to produce great bodily harm and death, having the care and custody of a child, under circumstances likely to produce great bodily harm and death, wilfully cause or permit that child to be injured and harmed which resulted in death . . . ." Section 12022.95 provides: "Any person convicted of a violation of Section 273a, who under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or injury that results in death, or having the care or custody of any child, under circumstances likely to produce great bodily harm or death, willfully causes or permits that child to be injured or harmed, and that injury or harm results in death, shall receive a four-year enhancement for each violation, in addition to the sentence provided for that conviction. . . ."

▇ Kinkead here contends, for the first time, that since none of the three scenarios provided in section 12022.95 had been stated *as the charged offense*, the enhancement allegation should not have been made. As before, however, Kinkead waived any defect in the charging document by failing to demur to it below.

Kinkead also contends that the true finding as to this enhancement should be reversed because it does not fit within the charged offense, or, otherwise states, the three scenarios provided for in section 12022.95 are inconsistent with the charged offense. However, the enhancement allegation was made in the charging document, so Kinkead clearly had notice of the necessity to defend against it. The jury made a true finding as to it and Kinkead does not contend that this finding is unsupported by the evidence. Thus, Kinkead is a person who has been convicted of a violation of section 273a and who also, by virtue of the jury's true finding, fits within the third scenario of section 12022.95,[14] which is all that is required under the statute.

▇ Kinkead contends, in the alternative, that the jury instructions given in regard to the enhancement allegation were defective. Although, as Kinkead points out, the word "willfully" was omitted from the instruction setting forth the elements of the enhancement allegation, as stated before, elsewhere the allegation was restated, which restatement included the willfulness requirement and willfulness was defined for the jury. Kinkead cites no authority holding that the definition of "willfulness" given is not the

---

[14]Kinkead was incorrect in his assertion, made at oral argument, that this occasion refers to direct, rather than indirect, abuse.

proper one for purposes of this enhancement. Without doubt, it is for child endangerment.[15] There is no logical basis upon which to conclude that a different definition is required for the enhancement. The only difference between the enhancement and child endangerment is that the latter requires no injury actually be inflicted and the former requires death to result from willfully causing or permitting the child to be injured or harmed. We reject Kinkead's contention that the absence of an additional requirement of knowledge of the consequences renders section 12022.95 invalid. The criminal negligence required for child endangerment imputes knowledge in that it envisions an act or acts which "is or are aggravated, reckless or flagrant and which is or are such a departure from what would be the conduct of an ordinarily prudent, careful person under the circumstances as to be contrary to a proper regard for human life or danger to human life or to constitute indifference to the consequences of that act or those acts. The facts must be such that the consequences of the negligent act or acts could reasonably have been foreseen and it must appear that the death or danger to human life was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrantly negligent act." To place a further requirement of knowledge of the consequences of the act, beyond that provided for in the standard definition of willfulness,[16] would conflict with the imputed knowledge embodied by the concept of criminal negligence.

4.  *Enhancement for Committing a Crime While on Bail for Another Offense**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Hollenhorst J., and Ward J., concurred.

A petition for a rehearing was denied June 19, 2000, and respondent's petition for review by the Supreme Court was denied September 13, 2000. Kennard, J., Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.

---

[15]See footnote 5, *ante.*

[16]We note that in *People v. Vargas* (1988) 204 Cal.App.3d 1455 [251 Cal.Rptr. 904] and *People v. Sheffield* (1985) 168 Cal.App.3d 158 [214 Cal.Rptr. 40], the courts concluded that the definition of "willfulness" given here was tantamount to a requirement of "with knowledge of the consequences."

*See footnote, *ante*, page 1113.