103 Cal.Rptr.2d 557 (2001)
86 Cal.App.4th 748
The PEOPLE, Plaintiff and Respondent,
v.
Eva VALDEZ et al., Defendants and Appellants.
The People, Plaintiff and Respondent,
v.
Eva Valdez, Defendant and Appellant.
Nos. C031612, C032849.
Court of Appeal, Third District.
January 30, 2001.
Review Granted May 2, 2001.
*558 Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant Eva Valdez.
Steven Shorr, under appointment by the Court of Appeal, Castro Valley, for Defendant and Appellant Hiram David Lebron.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Carlos A. Martinez, Supervising Deputy Attorney General, Robert M. Morgester, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
DAVIS, J.
The convictions in this case arose from the death of 11-month-old Thalia Escoto (Thalia), the daughter of defendant Hiram Lebron's (Lebron) live-in fiancée, defendant Eva Valdez (Valdez).[1]
Defendant Valdez was convicted of felony child endangerment, and an enhancement of child endangerment resulting in death was found to be true.[2] We will reverse the conviction. In the published portion of this opinion, we find that Valdez was prejudiced when the court instructed and the prosecutor argued to the jury that the necessary mental state for felony willful endangerment was met by proof of criminal negligence.[3] The crime's mental state is found in the endangerment statute's use of the term "willfully." From it we conclude that an accused must "purposefully" or "intentionally" cause or permit the child to be placed in a situation where there is a serious physical danger or a serious health hazard to the child. Given this required purpose or intent, the accused must subjectively know or be aware of the danger or hazard.
Defendant Lebron was convicted of one count of involuntary manslaughter and one count of assault on a child under eight years old resulting in death.[4] In the unpublished portion of this opinion, we reject Lebron's contentions and affirm the judgment against him.

BACKGROUND
On May 17, 1997, Lebron, who was watching 11 month old Thalia while Valdez *559 was at work, brought Thalia, unconscious, into the pediatric emergency room at University of California at Davis Medical Center. Appearing panicked and concerned, Lebron pointed to the right side of Thalia's head and told a nurse that she had fallen. Medical intervention failed to save Thalia's life.
An autopsy disclosed that Thalia had suffered a depressed-type skull fracture, which is typically caused by a blow. Thalia also had a linear skull fracture; various forces, such as blows or falls, can Cause linear fractures. According to Dr. Donald Henrikson, the pathologist who performed the autopsy, a "significant amount of force" would be necessary to produce such injuries, such as the force from a car accident, or from a fall of more than 10 feet, or from a deliberate assault.
Henrikson observed injuries to Thalia's brain and hemorrhages to her eyes, symptoms typical of the violent shaking associated with shaken infant syndrome. He also observed numerous contusions scattered about Thalia's body.
Henrikson concluded that Thalia died as a result of blunt force impact and shakinga homicide. Evidence of both fresh and older injuries suggested a pattern of continuing abuse. Dr. Claudia Greco, a neuropathologist, basically concurred with Henrikson's findings.
Evidence was presented of Lebron's involvement, or possible involvement, in various injuries suffered by Thalia, including a scalding burn, a broken arm, a black eye, and bumps and bruises to Thalia's head and body. These injuries took place over a three-month span, which roughly coincided with the period during which Lebron and Valdez lived together. Innocent explanations were offered for most of these injuries.
The case against Valdez was based on this "coincidental" series of injuries to Thalia. Four friends and acquaintances of Valdez suggested that she leave Lebron or at least find someone else to watch her children. There was also evidence that Valdez acknowledged she needed to find someone other than Lebron to take care of the children.

DISCUSSION

Part OneValdez's Appeal

1. Required Mental State for Felony Willful Endangerment

Valdez contends that the CALJIC No. 9.37 instruction improperly permitted her conviction for felony willful endangerment under section 273a(a) to be based on the mental state of criminal negligence rather than willful endangerment. In considering this contention, we must ascertain the required mental state for this offense. After ascertaining that mental state, we agree with Valdez and reverse her conviction.

A. Section 273a(a)Felony Child Abuse
As noted recently by our state Supreme Court, section 273a(a) "is an omnibus statute that proscribes essentially four branches of conduct."[5] Section 273a(a) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, [i] willfully causes or permits the person or health of that child to be injured, or [ii] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."
*560 Thus, section 273a(a) defines the various ways in which the offense of felony child abuse can be committed, and branch [3][ii] of section 273a(a) delineates the felony willful endangerment branch of that offense. Section 273a(a) requires that the proscribed conduct occur in "circumstances or conditions likely to produce great bodily harm or death." Section 273a, subdivision (b), governs misdemeanor child abuse; it proscribes essentially the same four branches of conduct, but the context is "under circumstances or conditions other than those likely to produce great bodily harm or death."[6] Although the trial court instructed, as to Valdez, on branch [1] and both strands of branch [3], the prosecutor's argument made clear that branch [3][ii]willful endangermentwas the branch at issue.[7]
The court in Sargent also stated with respect to section 273a(a)'s substantively identical predecessor, section 273a(l):
"We have observed that violation of section 273a(l) `can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect.' (People v. Smith (1984) 35 Cal.3d 798, 806 [201 Cal. Rptr. 311, 678 P.2d 886].) We have also observed, however, that `[t]wo threshold considerations ... govern all types of conduct prohibited by this law: first, the conduct must be willful; second, it must be committed "under circumstances or conditions likely to produce great bodily harm or death." (§ 273a, subd. (1) [now § 273a(a)].) Absent either of these elements, there can be no violation of the statute.' (Ibid.) Section 273a(l) is `intended to protect a child from an abusive situation in which the probability of serious injury is great.' (People v. Jaramillo (1979) 98 Cal.App.3d 830, 835 [159 Cal. Rptr. 771].) `[T]here is no requirement that the actual result be great bodily injury.' (Ibid.)"[8]

B. Incorporation of the Criminal Negligence Standard into the Mental State Element of the Felony Willful Endangerment Branch of Section 273a(a)
The story of the incorporation of the criminal negligence standard into the mental state element of section 273a(a) felony willful endangerment began 35 years ago with a decision from this court, People v. Beaugez.[9] In Beaugez, the defendants were charged with child endangermentin the words of then section 273afor willfully permitting a child "to be placed in such situation that its life or limb may be endangered, or its health likely to be injured."[10]
The defendants in Beaugez contended that this branch of section 273a was unconstitutionally vague.[11] The Beaugez court disagreed. Said the court: "By giving the *561 word `wilful' its accepted statutory meaning and by applying the `rule of reason' to the provision as a whole, we think sufficient clarity emerges to `provide a standard of conduct' to guide the guardian of the child against commission of the offense and to guide the trier of fact in determining guilt."[12]
Using section 7, which generally defines use of the word "willfully" in the Penal Code, the Beaugez court construed "`willfully' as used in ... section 273a to mean `purposeful' or `with knowledge of consequences.'"[13] Section 7 provides in relevant part: "The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context: [¶] 1. The word `willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." Beaugez then continued: "And by applying the `rule of reason' [footnote omitted] to the whole provision [of the section 273a willful endangerment branch] we construe its meaning as a whole to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable.... [S]o construed[,] we find [that branch] not void for vagueness."[14]
Ten years after Beaugez came the seminal decision in this area, Peabody, in which the Fifth Appellate District explicitly held "that the standard of conduct condemned by the [felony willful endangerment branch of section 273a(l), now section 273a(a)] is that of criminal negligence...."[15]Peabody noted that the felony willful endangerment branch of section 273a(a) "proscribes a person from wil[l]fully causing or permitting a child to be placed in a health endangering situation under circumstances likely to produce great bodily harm or death."[16]Peabody also noted that section 7 defines the word "willfully" "as simply a purpose or willingness to commit the act and does not require any intent to injure another."[17] However, said Peabody, section 20 states that in every crime there must exist a union or joint operation of act and intent, or act and criminal negligence.[18] Apparently focused on the fact that "willfully" does not require any intent to injure another, and concerned that the act of "permitting" dangerous placement is otherwise unqualified, the Peabody court concluded that willful endangerment requires a mental state of criminal negligence (i.e., gross negligence).[19] Later in its opinion, the court in *562 Peabody characterized Beaugez as "hold[ing] that section 273a, subdivision (1) [now § 273a(a)] does not require a criminal intent, but only a negligent placing of a child in a dangerous situation."[20]
With Peabody, the stage was set and criminal negligence has in effect defined the mental state element of felony willful endangerment ever since. This expression reached its apogee in People v. Rippberger. There, the First Appellate District stated, "Although Penal Code section 273a, subdivision (1) [now § 273a(a) ], does use the word `willfully,' the crime described is one of criminal negligence and not of malice or specific intent."[21] The state Supreme Court itself, in Walker v. Superior Court, did not dispute the defendant's broad statement there that section 273a(1) (now 273a(a)) requires criminal negligence in the commission of an offending act; Walker cited Peabody.[22]
That brings us to our Supreme Court's 1999 decision in Sargent.[23] There the court concluded that criminal negligence is not an element of the section 273a offense involving the branch of direct infliction of unjustifiable physical pain or mental suffering. "Rather, the defendant must have a mens rea of ... criminal intent to commit the proscribed act. In addition, the trier of fact must determine whether the infliction of the unjustifiable physical pain or mental suffering on a child was under circumstances or conditions likely to produce great bodily harm or death. If so, the crime is punishable as a felony. If not, it is punishable solely as a misdemeanor."[24]
The Sargent court arrived at this conclusion as follows. It began with the language of the statute"`inflicts [on a child] unjustifiable physical pain or mental suffering' "; this language, said the court, is most readily interpreted as requiring criminal intent,[25] Support for this view was found in similarly worded and similar offenses.[26] Moreover, noted the court, when the Legislature chooses to create a reasonable person standard, it knows how to do so. For example, section 273ab, which proscribes assault resulting in a child's death, expressly refers to assault "`by means of force that to a reasonable person would be likely to produce great bodily injury....'"[27]
Thus, the conduct element (the actus reus) for the child abuse branch at issue in Sargent is the infliction of unjustifiable physical pain or mental suffering on a child.[28] The mental state element (the mens rea) is "willful" infliction of such pain *563 or suffering (i.e., criminal intent).[29] And for such infliction to be a felony, it must involve the context element of "under circumstances or conditions likely to produce great bodily harm or death."[30] In this way, the felony infliction branch of section 273a(a) is akin to assault by means of force likely to produce great bodily injury; assault is an intent crime and the means of force likely to produce great bodily injury is the context element the trier of fact must also find.[31]
In its analysis, the Sargent court noted its statement in People v. Smith, that all types of conduct prohibited by section 273a "`must be willful,'"[32] and noted its failure to dispute the defendant's broad characterization in Walker v. Superior Court,[33] that section 273a requires criminal negligence.[34] The Sargent court also listed those cases which impose a criminal negligence requirement for section 273a, or which state that section 273a is a criminal negligence statute, noting that each of them involved indirect abuse rather than direct infliction.[35]
Sargent added, "Because in this case we address only the mens rea required for direct infliction of unjustifiable physical pain or mental suffering, the issue of what mens rea is required for the other three branches, discussed in Justice Mosk's concurring opinion, is not before us."[36]
In his concurring opinion, Justice Mosk, joined by Justice Kennard, dispensed with "Peabody and its progeny," concluding that felony child abuse "does not include a mental element of `criminal negligence'...."[37] Focusing on the section 273a adverb "willfully" and the section 7 definition of "willfully" (i.e., "a purpose or willingness to commit the act, or make the omission referred to"), Justice Mosk concluded that the required mental state for all four branches of child abuse under section 273a is "an intent to commit one of the proscribed acts or omissions, and a purpose to bring about, or allow, one of the proscribed results."[38]
In the appeal before us, we must confront an issue not addressed by the Sargent majoritythe required mental state for felony willful endangerment. Against this backdrop, we turn to that issue now.

C. Required Mental State for Felony Willful Endangerment
We begin with the language of the statute. To be convicted of section 273a(a) felony willful endangerment, a caretaker or custodian of a child must "willfully cause[ ] or permit[ ] [the] child to be placed in a situation where his or her person or health is endangered." (Italics added.) As defined in section 7, the word "willfully" means "a purpose or willingness to commit the act, or make the omission referred to."
Thus, to be convicted of section 273a(a) felony willful endangerment, a caretaker or custodian of a child must "purposefully" place, or purposefully permit the child to be placed, in a situation where its person *564 or health is endangered (i.e., the caretaker or custodian must act or fail to act for the purpose of placing the child in a situation where there is a serious physical danger or a serious health hazard to the child; given the required purposefulness of the act or omission, the caretaker or custodian must subjectively know or be aware of this danger or hazard).[39] In short, to paraphrase Beaugez, the felony willful endangerment branch of section 273a(a) proscribes intentionally placing a child, or intentionally permitting the child to be placed, in a situation where there is a serious physical danger or a serious health hazard to the child.[40]
In this way, the mental state element for section 273a(a) felony willful endangerment is purposefully or intentionally causing or permitting a child to be placed in a situation where the child's person or health is seriously endangered; given this required purpose or intent, the accused must subjectively know or be aware of the danger. There is no "criminal negligence" mental state element in section 273a.[41]
This interpretation is true to the section 273a(a) statutory language, which expressly requires that the caretaker or custodian "willfully cause[ ] or permit[ ][the] child to be placed in a situation where his or her person or health is endangered."[42]
This interpretation is true to the statutory purpose of section 273a(a). Section 273a(a) "is `intended to protect a child from an abusive situation in which the probability of serious injury is great.'"[43] It seeks to protect "children against risks they cannot anticipate."[44]
This interpretation is true to the manner in which courts apply the section 7 term "willfully" in a criminal statute that contains *565 that term. For example, in In re Stonewall F, this court defined the mental state for arson, which also uses the section 7 term "willfully."[45] In its analysis, the Stonewall F. court pointed to Peabody and the use of the section 7 term "willfully" in the offense of felony willful endangerment.[46] Incorporating section 7's definition of "willfully" into the endangerment offense, said Stonewall F., means "an intent to place the child in a situation in which its person or health [is] in fact endangered."[47]Stonewall F. continued: "The section 7 definition [of "willfully"] is entirely dependent upon the act to which `wilfull' is appended. The required intent is an intent to do just that to which the term wilfull is applied. Its significance therefore is wholly dependent upon the grammar of the specific offense in which the term is employed."[48]
This interpretation is also true to the state Supreme Court's requirement in People v. Smith that "all types of conduct" prohibited by section 273a(a) "must be willful," and that absent this "element," there can be no violation of the statute.[49]
And this interpretation is true to the established principle that "willful" means the prohibited conduct must be performed purposefully or intentionally, that is, with a more culpable state of mind than that required for "criminal negligence."[50]
As noted, the standard of criminal negligence was incorporated into the felony willful endangerment branch of section 273a in the seminal Court of Appeal decision of Peabody.[51]Peabody recognized that section 273a applies where the defendant "willfully causes or permits" the proscribed harm. Concerned, however, about the open-ended nature of "permitting" abuse, Peabody sought to meaningfully distinguish between those acts and omissions that are sufficiently culpable to warrant criminal liability and those that are not.[52]
Based on section 7, Peabody noted that the word "willfully" means simply a purpose or willingness to commit the act and does not require any intent to injure *566 another.[53] That is truethe felony willful endangerment branch does not require an intent to injure a child. But that branch does require, based on its language and the application of the section 7 definition of "willfully," an intent to place a child in a situation where the child's person or health is in fact seriously endangered.[54] This is in line with the purpose of section 273a, which seeks to protect "children against risks they cannot anticipate."[55]
In this way, Peabody's concern about the open-ended nature of "permitting" abuse evaporates, as does its concern that no culpable mental state is specified for the felony willful endangerment branch. As we have defined the mental state element of the felony willful endangerment branch, that branch is not tantamount to a strict liability offense; it requires a culpable mental state: the defendant must willfully (i.e., purposefully or intentionally) cause or permit the child to be placed in a situation where there is a serious physical danger or a serious health hazard to the child; given this purpose or intent, the accused must subjectively know or be aware of the danger or hazard.
Peabody characterized our holding in Beaugez in the following terms: "... Beaugez holds that section 273a, subdivision (1) [now § 273a(a)] does not require a criminal intent, but only a negligent placing of a child in a dangerous situation...."[56]Beaugez, however, carefully noted that the statute condemns "the intentional placing of a child, or permitting him to be placed, in a [seriously dangerous] situation...."[57]
Admittedly, Beaugez concludedin addressing the issue of whether the willful endangerment branch of section 273a is unconstitutionally vaguethat the dangerous situation had to be "reasonably foreseeable."[58] This conclusion, however, does not transform the culpable mental state specified in section 273a"willfully," that is, purposefully or intentionallyinto the less culpable mental state of "criminal negligence." This conclusion describes the required level of danger to satisfy due process concerns of statutory vagueness, not the required level of mental culpability.
Under our interpretation of the felony willful endangerment offense, there is no constitutional due process concern about vagueness. Under the mental state element of the offense, the accused must act or fail to act with the intent, or for the purpose, of placing the child in a situation where there is a serious physical danger or a serious health hazard to the child. Given this required intent or purpose, the accused must subjectively know or be aware of the danger or hazard. Under the conduct element of the offense, the accused must cause or permit a child to be placed in such a situation. Felony willful endangerment also requires an additional element, described as a context element: the act or failure to act must occur "under circumstances or conditions likely to produce great bodily harm or death."[59] So *567 construed, the felony willful endangerment branch provides "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[60]
Finally, Walker v. Superior Court poses no obstacle to our interpretation of section 273a(a).[61] In Walker, the Supreme Court concluded that a Christian Scientist mother could be prosecuted for criminal negligence-based involuntary manslaughter and felony willful endangerment.[62] In that case, the mother chose to treat her four-year-old daughter with prayer rather than obtain any medical treatment; the child lay seriously ill for 17 days, including a sustained period before death during which she lost weight, grew disoriented and irritable, and suffered heavy and irregular breathing. The child died of acute purulent (containing or secreting pus) meningitis.[63]
As noted in Sargent, the Walker court (citing Peabody ) merely accepted the defendant's broad statement there that section 273a requires criminal negligence in the commission of the offending act.[64] The Walker court did not analyze the mental state required for willful endangerment, but simply refuted the defendant's contention that she could not be found criminally negligent as a matter of law; the defendant in Walker, in any event, also faced a prosecution for involuntary manslaughter based properly on criminal negligence.[65] We have previously discussed how Peabody went astray in determining that the mental state for willful endangerment is criminal negligence. Justice Mosk, who authored Walker, obviously did not view Walker as an impediment to the intent-based mental state analysis he offered for section 273a(a) in his concurring opinion in Sargent.[66] Indeed, in that concurring opinion, Justice Mosk characterized "Peabody and its progeny" as "decisions [which] did not read what the statutory language stated as much as state what they had read into such language"; and he added: "[Section 273a(a)] obviously includes a mental element, which is indicated by `willfulness.'"[67]

D. Applying the Required Mental State for Felony Willful Endangerment to the Present Facts
That brings us to the facts at hand. Valdez was charged with and convicted of *568 felony willful endangerment under section 273a(a) for leaving Thalia in Lebron's care. As the prosecutor succinctly put it in closing argument: "We're not charging Eva Valdez with actually doing the abuse, but we[']re charging her ... for placing [Thalia] in a situation which clearly and obviously presented a danger to this baby."
In relevant part, the trial court instructed the jury on the section 273a offense as follows:
"In the crime and allegation charged in Count 3, namely [felony] child endangerment and the crime of misdemeanor child endangerment, which is a lesser crime, there must exist a union or joint operation of act or conduct and general criminal intent."[68]
"In the crime charged in Count 3 [felony child endangerment], or the crime of misdemeanor child endangerment, which is a lesser crime thereto, there must exist a union or joint operation of act or conduct and criminal negligence."[69]
"In order to prove this crime [felony child endangerment], each of the following elements must be proved[:]
"............................
"[A] person who had care or custody of a child ... [¶]

"... willfully caused or as a result of criminal negligence permitted the child to be placed in a situation where his or her person or health was in danger.
"[T]he person's conduct occurred under circumstances likely to produce great bodily harm or ... death." (Italics added.)[70]
Under our interpretation of the mental state element for section 273a(a) felony willful endangerment, the trial court misinstructed on this element of the offense. Using the standard CALJIC instruction, the trial court did not instruct in terms of "willfully permitted."[71] Instead the court instructed: "as a result of criminal negligence permitted." (Italics added.)
As we have defined the mental state element of the felony willful endangerment branch of section 273a(a), the defendant must willfully cause or willfully permit (i.e., purposefully or intentionally cause or permit) the child to be placed in a situation where there is a serious physical danger or a serious health hazard to the child. Given this required purpose or intent, the accused must subjectively know or be aware of this danger or hazard. There is no "criminal negligence" mental state element in this branch. Although it understandably used the standard CALJIC instruction, the trial court erred.
The question is whether this error prejudiced Valdez. We must conclude it did.
The standard of prejudice for misinstruction on an element of an offense is "whether it appears `beyond a reasonable doubt that the error ... did not contribute to the verdict obtained.'"[72] We cannot say, beyond a reasonable doubt, that the misinstruction here did not contribute to the verdict obtained.
As stated by the prosecutor in closing argument, the prosecution's "theory" of the case was that "as a result of [Valdez's] criminal negligence ... [Valdez] permitted the child to be placed in a situation where [the child's] person or health was in danger." "[C]riminal negligence," the prosecutor emphasized, "is really the heart of the case from a legal standpoint." The prosecutor explained: "So the criminal *569 standard is basically summed up in this.... Could a reasonable person looking at all the circumstances have seen this coming? ... [¶] What I do have to prove is that [Valdez] should have known, based on this objective standard[,] that continued ... exposure to [Lebron] would either cause [Thalia] serious bodily injury or death, and would an ordinary prudent person have seen that.... [The] ... criminal standard is that ordinary prudent people like us looking at these facts, what would we do?"
The defense counsel echoed these comments in his argument, explaining, "[W]hat the charge is in this case is as a result of criminal negligence, did Miss Valdez permit the child to be placed in a situation where her person or health was endangered, and [did] that person's conduct occur[ ] under circumstances likely to produce great bodily harm or death? That's what th[e] charge is."
The prosecutor arguably did not give Valdez even the benefit of the criminal negligence standard, let alone intent. The prosecutor's argument was more in line with ordinary negligence.
In a recent decision, People v. Kinkead, the Fourth Appellate District concluded that the instruction at issue here did not prejudice the defendant there on his section 273a(a) conviction.[73] To reach this conclusion, the Kinkead court relied on the section 12022.95 enhancement that was also found true. Section 12022.95, in relevant part, allows for a sentence enhancement for "[a]ny person convicted of a violation of [s]ection 273a" if, "having the care or custody of any child, under circumstances likely to produce great bodily harm or death, [that person] willfully causes or permits that child to be injured or harmed, and that injury or harm results in death...." Kinkead noted that to find this enhancement true, the jury there had to find, as instructed, that the defendant "intentionally permitted the victim to be injured or harmed" and "willfully permitted the victim to be harmed or injured."[74] On the "willfully permitted" instruction, the jury in Kinkead also received the proper section 7 definition of "willfully."[75]
A section 12022.95 enhancement was alleged and found true against Valdez. In contrast to Kinkead, however, the Valdez jury was simply instructed, regarding this enhancement, "willfully caused or permitted said child to be injured or harmed."[76] No section 7 definition of "willfully" was provided. Moreover, the grammatical structure of this enhancement instruction was similar to the structure of the instruction for the section 273a(a) charge given here, "willfully caused or as a result of criminal negligence permitted" the child to be placed in a dangerous situation.
Furthermore, the prosecutor, in his initial closing argument, did not even mention the section 12022.95 enhancement. The defense counsel mentioned it briefly in passing. Then the prosecutor stated in his reply closing argument:
"Just real quickly, [defense counsel] reminded me about the enhancement. There's an enhancement, and we call it enhancement. And you'll see [it in] the information.
"All it says is this, ... if you find that ... Eva Valdez has committed this crime, then you need to find an additional element. And the element, although it uses a lot of words, it basically calls you to find whether or not the child was killed, whether or not we actually] have a dead child in this case.
"[Specifically it says, that Eva Valdez, under circumstances likely to cause great bodily harm or death, willfully *570 permitted Thalia to suffer or be inflicted upon unjustifiable pain or injury that resulted in her death.
"............................
"The additional step [i.e., the enhancement] is did that great bodily harm result in death? And we know that that is truth. So then we know the enhancement is true, and that's all there is to that."
Although the prosecutor noted that for the section 12022.95 enhancement to apply, Valdez must have "willfully permitted," this brief remark did not actually track the instruction language for the enhancement of "willfully caused or permitted." More importantly, the tenor of the prosecutor's comments was that the death of the child equated to the enhancement.
Here, the case against Valdez was based on a series of significant injuries to baby Thaliaincluding a scalding burn, a broken arm, a black eye, and bumps and bruises to Thalia's head and body. These injuries took place over a three-month span, and coincided with the time Lebron and Valdez lived together and Lebron watched Thalia for Valdez. In view of the prosecution's theory of the case against Valdez, a theory based on criminal negligence, we cannot say it appears beyond a reasonable doubt that the misinstruction on criminal negligence did not contribute to the verdict obtained. We must reverse Valdez's conviction for felony willful endangerment.
Nevertheless, given the evidence of coincidental injuries as well as the evidence of four friends and acquaintances suggesting to Valdez that she leave Lebron or at least find someone else to watch her children, along with Valdez's own acknowledgment of this latter point, there is sufficient evidence, contrary to Valdez's argument, to sustain a section 273a(a) conviction against her. In light of our resolution, we need not consider any of Valdez's other contentions.

Part TwoLebron's Appeal[**]

DISPOSITION
The judgment against Valdez is reversed. The judgment against Lebron is affirmed.
BLEASE, Acting P.J., and SIMS, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part two.
[1] Defendant Valdez was resentenced pending appeal from her conviction; hence, the two appeals.
[2] Penal Code sections 273a, subdivision (a) (hereafter, § 273a(a)), 12022.95; all further references to code sections are to the Penal Code unless otherwise indicated. For convenience, we will refer to section 273a in its felony and misdemeanor aspects as "willful endangerment"; when we specifically refer to felony or misdemeanor willful endangerment, we will specify it as such.
[3] CALJIC No. 9.37 (1998 rev.) (6th ed.1996) pages 191-192 (hereafter, CALJIC No. 9.37).) That instruction states, in part, that an accused must "willfully cause [ ] or, as a result of criminal negligence, permit [ ] the child to be placed in a situation where his or her person or health is endangered." (Italics added.)
[4] Sections 192, 273ab.
[5] People v. Sargent (1999) 19 Cal.4th 1206, 1215, 81 Cal.Rptr.2d 835, 970 P.2d 409 (Sargent) (Sargent actually involved section 273a, subdivision (1) [hereafter, section 273(a)(1)], which is section 273a(a)'s substantively identical predecessor19 Cal.4th at page 1209, footnote 2, 1215, 81 Cal.Rptr.2d 835, 970 P.2d 409).
[6] Section 273a, subdivision (b), italics added. Section 273a(b) provides: "(b) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."
[7] See also People v. Peabody (1975) 46 Cal. App.3d 43, 45-46, 48-49, 119 Cal.Rptr. 780 (Peabody ) (mother left baby victim with father; there was no evidence that mother had inflicted the injuries on the baby, only father; thus, the mother was prosecuted under the willful endangerment branch of former section 273a(a)); Sargent, supra, 19 Cal.4th at pages 1216-1217, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[8] Sargent, supra, 19 Cal.4th at pages 1215 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[9] People v. Beaugez (1965) 232 Cal.App.2d 650, 43 Cal.Rptr. 28 (Beaugez).
[10] Beaugez, supra, 232 Cal.App.2d at page 655, 43 Cal.Rptr. 28.
[11] Beaugez, supra, 232 Cal.App.2d at page 655, 43 Cal.Rptr. 28.
[12] Beaugez, supra, 232 Cal.App.2d at page 657, 43 Cal.Rptr. 28.
[13] Beaugez, supra, 232 Cal.App.2d at pages 657-658, 43 Cal.Rptr. 28.
[14] Beaugez, supra, 232 Cal.App.2d at page 658, 43 Cal.Rptr. 28; in the footnote omitted, the court noted, "[t]he so-called `rule of reason[,]' sometimes referred to as the test of the `reasonably prudent man,' or of the man of `common intelligence[,]'" has been applied in a number of cases, including a case dealing with a vagueness challenge to the now first and second branches of section 273aPeople v. Curtiss (1931) 300 P. 801, 116 Cal.App. Supp. 771, 778-781.
[15] Peabody, supra, 46 Cal.App.3d at page 45, 119 Cal.Rptr. 780. "Criminal negligence is `"aggravated, culpable, gross, or reckless, that is, ... such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life.(Sargent, supra, 19 Cal.4th at page 1215, 81 Cal.Rptr.2d 835, 970 P.2d 409, quoting People v. Penny (1955) 44 Cal.2d 861, 879, 285 P.2d 926.)
[16] Peabody, supra, 46 Cal.App.3d at page 46, 119 Cal.Rptr. 780.
[17] Peabody, supra, 46 Cal.App.3d at page 46, 119 Cal.Rptr. 780.
[18] Peabody, supra, 46 Cal.App.3d at page 46, 119 Cal.Rptr. 780.
[19] Peabody, supra, 46 Cal.App.3d at pages 46-47, 119 Cal.Rptr. 780; see People v. Heitzman (1994) 9 Cal.4th 189, 218-219, 37 Cal.Rptr.2d 236, 886 P.2d 1229 (dis. opn. of Baxter J.).
[20] Peabody, supra, 46 Cal.App.3d at page 48, 119 Cal.Rptr. 780.
[21] People v. Rippberger (1991) 231 Cal.App.3d 1667, 1682, 283 Cal.Rptr. 111.
[22] Walker v. Superior Court (1988) 47 Cal.3d 112, 134-135, 253 Cal.Rptr. 1, 763 P.2d 852 (Walker); see Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409; see also the following cases adopting criminal negligence as the required mental state under section 273a or generally characterizing criminal negligence as a required element of the section 273a offense: People v. Hansen (1997) 59 Cal.App.4th 473, 478, 68 Cal.Rptr.2d 897; People v. Sanders (1992) 10 Cal.App.4th 1268, 1273, 13 Cal.Rptr.2d 205; People v. Deskin (1992) 10 Cal.App.4th 1397, 1402, 13 Cal. Rptr.2d 391; People v. Lee (1991) 234 Cal. App.3d 1214, 1221, 286 Cal.Rptr. 117; People v. Odom (1991) 226 Cal.App.3d 1028, 1032, 277 Cal.Rptr. 265; People v. Pointer (1984) 151 Cal.App.3d 1128, 1133-1135, 199 Cal. Rptr. 357; People v. Hernandez (1980) 111 Cal.App.3d 888, 895, 168 Cal.Rptr. 898.
[23] Sargent, supra, 19 Cal.4th 1206, 81 Cal. Rptr.2d 835, 970 P.2d 409.
[24] Sargent, supra, 19 Cal.4th at page 1224, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[25] Sargent, supra, 19 Cal.4th at page 1219, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[26] Sargent, supra, 19 Cal.4th at pages 1219-1220, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[27] Sargent, supra, 19 Cal.4th at page 1220, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[28] Sargent, supra, 19 Cal.4th at page 1222, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[29] Sargent, supra, 19 Cal.4th at page 1223, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[30] Sargent, supra, 19 Cal.4th at page 1223, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[31] Sargent, supra, 19 Cal.4th at pages 1221-1222, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[32] Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409, quoting People v. Smith (1984) 35 Cal.3d 798, 806, 201 Cal. Rptr. 311, 678 P.2d 886.
[33] Walker, supra, 47 Cal.3d at page 135, 253 Cal.Rptr. 1, 763 P.2d 852.
[34] Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[35] Sargent, supra, 19 Cal.4th at pages 1218-1219, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[36] Sargent, supra, 19 Cal.4th at page 1216, footnote 5, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[37] Sargent, supra, 19 Cal.4th at page 1230, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[38] Sargent, supra, 19 Cal.4th at pages 1226-1228, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[39] See Beaugez, supra, 232 Cal.App.2d at page 658, 43 Cal.Rptr. 28 (the situation in which the child is placed must present a "serious physical danger or health hazard"; italics added] ); see also Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409 (section 273a(l), now section 273a(a), "is `intended to protect a child from an abusive situation in which the probability of serious injury is great'"; "`there is no requirement that the actual result be great bodily injury,'" quoting People v. Jaramillo (1979) 98 Cal. App.3d 830, 835, 159 Cal.Rptr. 771).
[40] Beaugez, supra, 232 Cal.App.2d at page 658, 43 Cal.Rptr. 28. Using the section 7 definition of "willfully," the Beaugez court "construe[d] `willfully' as used in ... section 273a to mean `purposeful' or `with knowledge of consequences.'"(Id. at pp. 657-658, 43 Cal.Rptr. 28, italics added.) Section 7 does not mention "knowledge of consequences," and Beaugez appears to have borrowed the phrase from the context of public welfare offenses rather than the more appropriate context of true crimes involving a mens rea (mental state). (Id. at p. 658, fn. 3, 43 Cal. Rptr. 28.) Furthermore, if this knowledge standard were to be applied exclusively, it could lead to an erroneous mental state of recklessness. For these reasons, we decline to incorporate the "knowledge of consequences" phrasing into the required mental state for section 273a(a).
[41] Under section 273a, felony willful endangerment requires that the caretaker or custodian "willfully cause[ ] or permit[ ][the] child to be placed in a situation where his or her person or health is endangered (§ 273a(a), italics added.) Misdemeanor willful endangerment under section 273a requires that the caretaker or custodian "willfully cause! ] or permit[ ][the] child to be placed in a situation where his or her person or health may be endangered (§ 273a(b), italics added.) As noted in Sargent, supra, 19 Cal.4th at page 1223, 81 Cal.Rptr.2d 835, 970 P.2d 409, the mental state element for both felony and misdemeanor section 273a violations, under the direct infliction branch, is the same. It is thus the context elementi.e., "under circumstances or conditions likely to produce great bodily harm or death"that distinguishes the felony from the misdemeanor.
[42] Section 273a(a), italics added; People v. Kinkead (2000) 80 Cal.App.4th 1113, 1119, 96 Cal.Rptr.2d 121 (Kinkead).
[43] Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409, quoting People v. Jaramillo, supra, 98 Cal.App.3d at page 835, 159 Cal.Rptr. 771.
[44] People v. Toney (1999) 76 Cal.App.4th 618, 622, 90 Cal.Rptr.2d 578 (Toney), italics added.
[45] In re Stonewall F. (1989) 208 Cal.App.3d 1054, 256 Cal.Rptr. 578 (Stonewall F.).
[46] Stonewall F., supra, 208 Cal.App.3d at pages 1065-1066, 256 Cal.Rptr. 578.
[47] Stonewall F., supra, 208 Cal.App.3d at page 1066, 256 Cal.Rptr. 578.
[48] Stonewall F., supra, 208 Cal.App.3d at page 1066, 256 Cal.Rptr. 578.
[49] People v. Smith, supra, 35 Cal.3d at page 806, 201 Cal.Rptr. 311, 678 P.2d 886; see also Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409 (quoting Smith in this respect).
[50] See section 7; see also People v. Lara (1996) 44 Cal.App.4th 102, 107, 51 Cal. Rptr.2d 402 (battery is an intent crime; "[t]his necessarily excludes criminal liability when the force or violence is accomplished with a `lesser' state of mind, i.e., `criminal negligence'"); In re Jerry R. (1994) 29 Cal. App.4th 1432, 1436, 1438-1439, 35 Cal. Rptr.2d 155 (the section 246.3 offense of "willfully discharging] a firearm in a grossly negligent manner which could result in injury or death" means that a defendant must "purposefully, willingly, or intentionally fire[ ] the weapon, with the added requirement that the firing occur[ ] in a grossly negligent manner which could result in injury or death"); People v. Smith (1997) 57 Cal.App.4th 1470, 1480, 67 Cal.Rptr.2d 604 (criminal negligence is insufficient to establish the intent offense of assault); People v. Becker (1949) 94 Cal. App.2d 434, 442-443, 210 P.2d 871 (distinguishing "willful" from "criminal negligence," with "willful" equated to "intentional"; general instruction on section 20, with its reference to criminal negligence, should not have been given, but is not prejudicial when correct instructions on intent are also given); see also 1 Witkin & Epstein, California Criminal Law (3d ed. 2000) Elements, section 20. page 225 (criminal negligence cannot be a substitute for a particular mental state such as willfulness).
[51] Peabody, supra, 46 Cal.App.3d 43, 119 Cal. Rptr. 780.
[52] Peabody, supra, 46 Cal.App.3d at pages 46-49, 119 Cal.Rptr. 780; see also People v. Heitzman, supra, 9 Cal.4th at pages 218-219, 37 Cal.Rptr.2d 236, 886 P.2d 1229 (dis. opn. of Baxter, J.).
[53] Peabody, supra, 46 Cal.App.3d at page 46, 119 Cal.Rptr. 780.
[54] Stonewall F., supra, 208 Cal.App.3d at pages 1065-1066, 256 Cal.Rptr. 578; Beaugez, supra, 232 Cal.App.2d at pages 657-658, 43 Cal.Rptr. 28.
[55] Toney, supra, 76 Cal.App.4th at page 622, 90 Cal.Rptr.2d 578, italics added; see also Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409 (section 273a(l) [now § 273a(a) ] is intended to protect a child from an abusive situation in which the probability of serious injury is great; there is no requirement that the actual result be great bodily injury).
[56] Peabody, supra, 46 Cal.App.3d at page 48, 119 Cal.Rptr. 780, italics added.
[57] Beaugez, supra, 232 Cal.App.2d at page 658, 43 Cal.Rptr. 28, italics added.
[58] Beaugez, supra, 232 Cal.App.2d at page 658, 43 Cal.Rptr. 28.
[59] Section 273a(a); see Sargent, supra, 19 Cal.4th at page 1223, 81 Cal.Rptr.2d 835, 970 P.2d 409 (maj.opn.), 1227-1228 (conc. opn. of Mosk, J.).
[60] People v. Heitzman, supra, 9 Cal.4th at page 199, 37 Cal.Rptr.2d 236, 886 P.2d 1229, quoting Kolender v. Lawson (1983) 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 for the aforementioned standard.
[61] Walker, supra, 47 Cal.3d 112, 253 Cal.Rptr. 1, 763 P.2d 852.
[62] Walker, supra, 47 Cal.3d at pages 120, 144, 253 Cal.Rptr. 1, 763 P.2d 852; section 273a, subdivision (1) (now § 273a(a)).
[63] Walker, supra, 47 Cal.3d at page 119, 253 Cal.Rptr. 1, 763 P.2d 852.
[64] Sargent, supra, 19 Cal.4th at page 1216, 81 Cal.Rptr.2d 835, 970 P.2d 409; Walker, supra, 47 Cal.3d at pages 134-135, 253 Cal.Rptr. 1, 763 P.2d 852.
[65] Walker, supra, 47 Cal.3d at pages 134-138, 253 Cal.Rptr. 1, 763 P.2d 852.
[66] Sargent, supra, 19 Cal.4th at pages 1226-1228, 81 Cal.Rptr.2d 835, 970 P.2d 409.
[67] Sargent, supra, 19 Cal.4th at page 1230, 81 Cal.Rptr.2d 835. 970 P.2d 409. The decision in Toney, supra, 76 Cal.App.4th 618, 90 Cal. Rptr.2d 578 (from the Second Appellate District and decided after Sargent) states that section 273a(a) requires the prohibited conduct to be willful, and that cases involving "`indirect abuse'" require a showing of criminal negligence. (Id. at p. 622, 90 Cal.Rptr.2d 578.) For the criminal negligence point, Toney cites to the passage in Sargent that lists the indirect abuse cases that impose a criminal negligence requirement, that is, Peabody and its progeny. (Ibid.; Sargent, supra, 19 Cal.4th at pp. 1218-1219, 81 Cal.Rptr.2d 835, 970 P.2d 409.) Toney does not analyze the mental state requirement of section 273a(a), but simply applies both the "willful" element and the "criminal negligence" element. (Toney, supra, at pp. 622-623, 90 Cal.Rptr.2d 578.) We have concluded that section 273a does not contain a "criminal negligence" mental state element.
[68] CALJIC No. 3.30, as given.
[69] CALJIC No. 3.35, as given.
[70] CALJIC No. 9.37, as given.
[71] CALJIC No. 9.37.
[72] People v. Swain (1996) 12 Cal.4th 593, 607, 49 Cal.Rptr.2d 390, 909 P.2d 994, quoting Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; People v. Lara, supra, 44 Cal.App.4th at page 111, 51 Cal. Rptr.2d 402.
[73] Kinkead, supra, 80 Cal.App.4th at pages 1117-1120, 96 Cal.Rptr.2d 121.
[74] Kinkead, supra, 80 Cal.App.4th at pages 1118-1119, 96 Cal.Rptr.2d 121.
[75] Kinkead, supra, 80 Cal.App.4th at page 1118 and footnote 5, 96 Cal.Rptr.2d 121.
[76] CALJIC No. 17.24.1, as given.
[**] See footnote *, ante.